2005 WY 35

**Thomas S. HALL, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 03–238.**

Supreme Court of Wyoming.

March 30, 2005.

Representing Appellant: Kenneth M. Koski, State Public Defender, and Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, former Director, Prosecution Assistance Program; Eric Johnson, Director, and Simone Spector, Student Intern. ·Argument by Ms. Spector.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and STEBNER, D.J., Retired.

HILL, Chief Justice.

[¶ 1] Appellant, Thomas S. Hall (Hall), was convicted of conspiracy to engage in a clandestine laboratory operation.[1] He chal-

---

1. Wyo. Stat. Ann. § 35–7–1059 (LexisNexis 2003)    provides:

lenges that conviction, contending that the district court erred in refusing the admission of testimony by two witnesses to the effect that one of the principal witnesses for the State had threatened to make accusations of drug dealing against others on previous occasions, in order to promote her own self-interest. Hall also contends that the district court erred in giving the jury a confusing and misleading, limiting instruction with respect to W.R.E. 404(b) evidence, and that the State erroneously elicited testimony from the State's principal witness regarding her guilty plea and plea agreement. We will affirm.

## ISSUES

[¶ 2]   Hall posits these issues for our consideration:

I.   Whether the trial court denied Mr. Hall his constitutional right to present a defense by refusing to admit testimony of Ms. Schriner's propensity to make false accusations.

II.   Whether Mr. Hall was denied a fair trial when the trial court instructed the jury that Mr. Hall had a certain character.

III.   Whether plain error occurred when the prosecutor elicited testimony from Ms.

Schriner regarding her guilty plea and plea agreements.

The State restates the issues thus:

I.   Did the district court properly exclude testimony from defense witnesses regarding prior threats and accusations by State's witness Brenda Schriner?

II.   Did the district court's limiting instruction regarding testimony given by State's witness Donald Farmer erroneously instruct the jury that [Hall] had "a certain character," which was that of a drug dealer?

III.   Did the State improperly elicit testimony from witness Brenda Schriner regarding her plea of guilty and plea agreement, or improperly use that testimony in closing argument?

## FACTS

[¶ 3]   There is little or no dispute about the operative facts of this case. Hall was charged with conspiring with or aiding Brenda Schriner (Schriner) and Todd Harnden (Harnden) to operate a clandestine laboratory. In this instance, the laboratory was used to produce or refine methamphetamine. Schriner and Harnden entered into plea agreements with the State and entered pleas

§ 35–7–1059.   Unlawful clandestine laboratory operations; penalties.

(a) *It is unlawful for any person to knowingly or intentionally:*

(i) Possess a List I or II controlled substance precursor with the intent to engage in a clandestine laboratory operation;

(ii) Possess laboratory equipment or supplies with the intent to engage in a clandestine laboratory operation;

(iii) Sell, distribute or otherwise supply a List I or II controlled substance precursor, laboratory equipment or laboratory supplies knowing it will be used for a clandestine laboratory operation;

(iv) *Conspire with or aid another to engage in a clandestine laboratory operation.*

(b) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than twenty (20) years, a fine of not more than twenty-five thousand dollars ($25,000.00), or both.

(c) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than twenty-five (25) years, a fine of not more than fifty thousand dollars ($50,000.00), or both if the judge or jury also finds any one (1) of the following

conditions occurred in conjunction with that violation:

(i) Illegal possession, transportation or disposal of hazardous or dangerous material or while transporting or causing to be transported materials in furtherance of a clandestine laboratory operation, there was created a substantial risk to human health or safety or a danger to the environment;

(ii) The intended laboratory operation was to take place or did take place within five hundred (500) feet of a residence, business, church or school; or

(iii) Any phase of the clandestine laboratory operation was conducted in the presence of a person less than eighteen (18) years of age.

(d) A person who violates subsection (a) of this section is guilty of a felony punishable by imprisonment for not more than forty (40) years, a fine of not more than one hundred thousand dollars ($100,000.00), or both if the judge or jury also finds any one (1) of the following conditions occurred in conjunction with that violation:

(i) Use of a firearm;

(ii) Use of a booby trap. [Emphasis added.]

of guilty to operating a clandestine laboratory, although that laboratory was not the same one with which Hall was charged. However, it was Schriner and Harnden who actually set up and operated the clandestine laboratory that resulted in the criminal charge against Hall. That laboratory was set up in Hall's home. Although the evidence most strongly suggests that Hall did not actively participate in the operation of the laboratory, there was evidence from which the jury could find that he conspired with Schriner and Harnden in the overall process of that operation. The appeal does not challenge the sufficiency of the evidence upon which Hall's conviction rests. There are procedural facts that form the basis of the issues that are presented to us, and we will elaborate on those facts in our discussion of the issues.

**Was Hall Denied the Right to Present Evidence of his Principal Theory of Defense**

[¶ 4] Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion. We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria. It also means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the trial court's determination. The burden is on the defendant to establish such abuse. *Wilde v. State*, 2003 WY 93, ¶ 13, 74 P.3d 699, ¶ 13 (Wyo.2003).

[¶ 5] In a pretrial memorandum, Hall proposed to call two witnesses in his defense. They were to testify that Schriner threatened to report to authorities that they were involved in drug-related crimes. Hall proposed to call John David Parker as a witness to testify that Schriner falsely accused him of possessing methamphetamine in order to divert the authorities' attention from her to Parker. He asked to call Jim Mikolash to testify that Schriner threatened to report him to the Division of Criminal Investigation if he refused to fix her car, etc. Hall's theory was that Schriner was a methamphetamine addict who used such threats to gain one sort of advantage or another, thus to promote her own self-interest. Furthermore, the purport of the evidence was in part to demonstrate her lack of truthfulness, but of equal importance was that it also demonstrated her propensity to report to authorities if it served to further her self-interest. In Hall's case, it was to further her interest in a favorable plea agreement with the State. The district court determined that this testimony would not be allowed:

> With respect to Mr. Mikolash, we have the alleged threats to turn him in to the DCI or the police if he didn't do what Ms. Schriner wanted, I guess, work on the car or some other such thing. If Mr. Mikolash were the defendant, I think it clearly would be admissible and go directly to motive but he is not around. I don't see that it has any particular relevance with respect to Mr. Hall. Now, if there were evidence that she made such threats to Mr. Hall, I would probably admit those. But I don't think making threats to somebody else who's not party in this matter is particularly relevant and I do think it is extrinsic evidence of other bad acts and therefore not admissible.
>
> . . . .
>
> With respect to Mr. Parker and the proposed testimony that she falsely accused him, this is an awful lot like Mikolash. Again, it's extrinsic evidence. It may or may not be a prior bad act. I don't know. He says it was false. Obviously, she may say different. She did say different at one time. I'm not going to have this trial descend into all kinds of mini-trials in this matter and I don't think it's particularly relevant. She has been convicted. She has her guilty plea on the record in this matter. That's fair game. I don't think the other accusations with respect to

Mr. Parker or the threats with respect to Mr. Mikolash are admissible under 608(b), and I think for the purposes of record, I need to make a finding and will do so that this is not proper evidence for either direct evidence by the defense or cross-examination of the witness because I don't think they go to truth or character for truthfulness or untruthfulness with respect to issues in this trial.

[¶ 6] W.R.E. 608 provides:

(a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

[¶ 7] Professors Mueller and Kirkpatrick summarize the position taken by Hall in this excerpt from their treatise:

Extrinsic evidence of nonconviction misconduct by a witness that may reflect untruthful disposition is not invariably excludable, even when offered solely on credibility issues. The reason is that proving nonconviction misconduct may tend to impeach in ways that do not require, or invite any inference about, the truthful or untruthful disposition of the witness. Of course, FRE 608(b) says that it is all right to ask the witness about such misconduct (his answer is not extrinsic evidence), and in three common situations this provision does not bar other evidence—extrinsic proof in the form of testimony by others or documents or physical exhibits—that shows nonconviction misconduct:

First, extrinsic evidence of misconduct is often admitted to impeach in various other ways that do not involve arguments that the witness is by character or disposition untruthful. For example, extrinsic evidence of misconduct may be admitted to show that a witness is motivated by bias, interest, or influence, and the misconduct may show hostility or animus toward a party. Sometimes such evidence even tends to show absence of bias or corruption. And evidence of conduct by a witness may be admitted if it tends to show mental or sensory incapacity, or shows a prior statement inconsistent with trial testimony.

Such uses do not offend FRE 608(b) simply because the purpose is not to show untruthful disposition, but to show a motive or reason to slant testimony, or mental or sensory defect, or change in story. When arguments of these sorts are so attenuated as to be unconvincing and the impeaching evidence amounts to misconduct that undermines character, courts sometimes cite FRE 608 as a reason to exclude the evidence, which is perhaps another way to reach the right result, although it would be more straightforward simply to say the evidence is prejudicial and fails to support the attacking party's argument invoking these other impeaching methods.

3 Christopher B. Mueller and Laird C. Kirkpatrick, *Federal Evidence* § 268 at 186–89 (2nd ed.1994).

[¶ 8] At trial, Mikolash was allowed to give his opinion about both Schriner's and Harnden's reputations for truthfulness. Mikolash also testified that he had caught

Harnden at his home, uninvited and unbeknownst to him, cooking methamphetamine. Mikolash threw him out, and later Schriner came to his house to reclaim the implements for making methamphetamine that Harnden had left behind. During his testimony, Mikolash admitted that he had used methamphetamine occasionally. At trial, Parker was not asked about the reputation for truthfulness of either witness, rather his testimony was directed at providing Hall with at least a partial alibi for the date of the offense for which he was convicted, as well as placing both Schriner and Harnden at Hall's house cooking methamphetamine when Hall was not present.

[¶ 9] Hall's argument in this regard is persuasive, at least to a degree. It was made very clear to the jury that Schriner was also involved in the drug trade, and that she was receiving lenient treatment in exchange for her cooperation. Hall's theory was that Schriner had a motive to slant her testimony, so as to implicate him in the clandestine laboratory operation, in order to achieve her desired goal of being placed on probation—i.e., her self-interest gave her a motive to lie or exaggerate. That such a motive might exist was not beyond the pale of real possibility. Schriner's testimony was more definite than Harnden's that Hall participated in the clandestine laboratory operation, although even her testimony was to the effect that Hall's participation was, at most, minimal. Certainly her testimony placed Hall at the scene and credited him with knowledge of what she and Harnden were doing. There was also testimony that the methamphetamine the clandestine laboratory was designed to refine belonged to Hall.

[¶ 10] We start with the proposition that a witness' bias was a proper subject for impeachment at common law and remained so even after the adoption of the Federal Rules of Evidence. *United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 468–71, 83 L.Ed.2d 450 (1984).

Bias may be induced by a witness's like, dislike, or fear of a party, or the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony. The "common law of evidence" allowed the showing of bias by extrinsic evidence, while requiring the cross-examiner to "take the answer of the witness" with respect to less favored forms of impeachment.

105 S.Ct. at 469.

[¶ 11] In the case, *United States v. Calle*, 822 F.2d 1016, 1020–21 (11th Cir.1987), it was held:

The trial court's limitation on the testimony of Lee Martin, Calle's principal defense witness, raises much more serious questions. Although Fed.R.Evid. 608(b) prohibits a party from introducing extrinsic evidence of prior misconduct merely to impeach the general credibility of a witness, 'extrinsic evidence which contradicts the *material* testimony of a prior witness is admissible.' *United States v. Russell*, 717 F.2d 518, 520 (11th Cir.1983)(emphasis in original). Moreover, evidence relevant to a material issue is not rendered inadmissible because it happens to include references to specific bad acts of a witness. Extrinsic evidence of a witness' prior misconduct should be excluded where that evidence is probative only of the witness' general propensity for truthfulness; such evidence should be admitted, however, where it is introduced to disprove a specific fact material to the defendant's case. *United States v. Opager*, 589 F.2d 799, 801 (5th Cir. 1979). Rule 608(b) "should not stand as a bar to the admission of evidence introduced to contradict, and which the jury might find disproves a witness' testimony as to a material issue of the case." *Id.*, at 803.

We find that Martin's excluded testimony would have been relevant to disprove a specific fact material to Calle's defense. Garcia's testimony created the impression that he was merely a small-time drug user, who only bought and sold small amounts for his personal use. To the contrary, Martin's testimony would have portrayed Garcia as having led a first-class, cash-oriented lifestyle consistent with that of a

major drug trafficker. Such a characterization would have contradicted the government's theory that Garcia was only an intermediary who needed someone with more extensive drug connections to supply the large quantity of cocaine involved here. Thus, Martin's testimony was crucially important to the defense because it supported the inference that Garcia and not Calle was the true source of the cocaine in this transaction.

Moreover, Martin's statements would have been relevant to show Garcia's motive to falsify his testimony. Martin would have portrayed Garcia as a major drug user and dealer, contrary to Garcia's self-serving testimony. This contradiction would have raised the possibility that Garcia lied about his prior drug activities in order to protect himself from further prosecution and shift the major part of the blame in this case from himself to Calle. The self-interest of a witness, as opposed to the witness' general character for veracity, is not a collateral issue. *See United States v. Fusco,* 748 F.2d 996, 998 (5th Cir.1984). Therefore, evidence that happens to include prior misconduct still may be admissible when offered to show the witness' possible bias or self-interest. *United States v. Noti,* 731 F.2d 610, 613 (9th Cir.1984).

That court went on to hold that while such error may be harmless, it was not harmless in the circumstances outlined above.

[¶ 12] In *United States v. Ray,* 731 F.2d 1361, 1363–65 (9th Cir.1984) it was held:

Scoggin claimed that Crow, after entering into his plea agreement but before trial, had continued to traffic in cocaine. Specifically, Scoggin alleged that Crow had traveled to Florida twice under a false name, presumably to purchase drugs, and that Crow had offered to sell Scoggin two ounces of cocaine. Relying on Fed.R.Evid. 608(b), the trial court refused to allow Scoggin to cross-examine Crow on this matter.

When the case against a defendant turns on the credibility of a witness, the defendant has broad cross-examination rights. *See, e.g., United States v. Uramoto,* 638 F.2d 84, 86 (9th Cir.1980), *United States v. Alvarez–Lopez,* 559 F.2d 1155 (9th Cir. 1977). The district court abused its discretion in refusing to permit Scoggin to cross-examine Crow on his alleged post-plea drug activities, because a jury could believe that Scoggin's allegations of Crow's continuing drug dealing might have biased Crow's testimony against Scoggin.

Rule 608(b) does not bar introduction of evidence to show that the witness is biased. It regulates only the admissibility of evidence offered to prove the truthful or untruthful character of a witness.... The reach of Rule 608 is suggested by the Advisory Committee's notes to Rule 608(a), which state that evidence of bias or interest does not constitute an attack on a witness' character for truthfulness.

In this case, Crow's possible bias deserved jury scrutiny because his testimony was crucial to proving that Scoggin had bought drugs in quantities sufficient to support the inference that he intended to distribute them. It would have been extremely easy for a biased witness to shade his testimony and increase the amount of cocaine Scoggin bought from an amount suitable for personal consumption to one suitable for distribution.

The government argues that if we permit Scoggin to cross-examine Crow on his continued drug dealing to show bias, any defendant will be able to bootstrap otherwise inadmissible evidence into court by simply reporting witness misconduct to the authorities, and then seeking to cross-examine the witness on the subject at trial. This is a legitimate concern, but trial courts can require the defendant to offer a threshold level of evidence to show that the defendant's allegations of witness misconduct have some grounding in reality. If the facts are material, the defendant has a right to present them to the jury. Scoggin met this threshold requirement by producing a Lewiston to Boise airline ticket for Crow, arguing that the flight was the first leg of a trip to Florida and thus tended to corroborate his allegation that Crow had gone to Florida to buy cocaine. [Some internal citations omitted.]

That court also considered whether the error was reversible and determined that it was.

[¶ 13] In *United States v. James,* 609 F.2d 36, 45–48 (2nd Cir.1979) it was held:

After the government rested its case, James sought to call Wilder to testify. The government, however, reversed its previous position and objected that the proffered testimony was barred by Rule 608(b)'s prohibition of extrinsic proof of specific instances of conduct for the purpose of attacking a witness' credibility. The government argued that "since it goes to whether Mr. Starns was telling a truth or not a truth as to something regarding North Carolina rather than something regarding Tri–State [, the testimony] falls within that exception for extrinsic evidence." The judge then reversed her earlier ruling and agreed that Rule 608(b) barred Wilder's testimony. After further discussion with counsel, the court added, as a second reason for excluding the testimony, that it was not necessary or crucial for the defense because it was obvious from Starn's testimony that he had been indicted and was hoping for lenient treatment.

The district court erred in concluding that Rule 608(b) applied to either the FBI reports or Wilder's testimony. Although the language of the rule is unfortunately awkward, the Notes of the Advisory Committee show that it was intended to regulate only the use of specific instances of conduct to prove that the witness is a "bad person" or is a generally untruthful person who should not be believed. See 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 608[01], [05] (1978). However, "bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely."

That court held that the district court erred in determining that the offered evidence was inadmissible. However, it went on to find that the error did not mandate reversal. "The test is whether the jury is in possession of sufficient information to make a discriminating appraisal of a witness' possible motives for testifying falsely in favor of the government." 609 F.2d at 47.

[¶ 14] We conclude that the district court erred in deciding that the evidence offered by Hall was inadmissible on the basis that it was extrinsic evidence, as contemplated by Rule 608(b) and/or that it was not relevant. We also conclude, after a comprehensive examination of the record, that the error does not mandate reversal. Schriner's motive to testify falsely was adequately presented to the jury, as was her reputation for untruthfulness. The jury also had sufficient information that Schriner had pleaded guilty to a crime similar to that with which Hall was charged, and that she was to receive probation as a sentence if she testified against all other persons involved in this crime. This proposition was vigorously argued to the jury both in opening argument and in summation. Both Parker and Mikolash commented on their low opinion of Schriner, as did the proprietors of two Laramie businesses where Schriner had worked: "Brenda is not an honest person," and, "She is—you can't believe anything she says. She's very dishonest, and I wouldn't trust her at all." Although the district court erred in disallowing the disputed testimony, we hold that it is not reversible error under the circumstances of this case because the jury possessed sufficient information to make a discriminating appraisal of Schriner's possible motives for testifying in favor of the State.

### Error in Giving Limiting Instruction

[¶ 15] A considerable volume of W.R.E. 404(b)[2] evidence was admitted

2. W.R.E. 404(b) provides:

    (a) *Character evidence generally.* **Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion,** except:

    (1) *Character of accused.* Evidence of a pertinent trait of his character offered by an

accused, or by the prosecution to rebut the same;

    (2) *Character of victim.* Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case

against Hall during his trial. Defense counsel asked that a limiting instruction be given after the testimony of each witness who testified about 404(b) evidence. The limiting instruction offered by Hall for the district court's consideration was this:

> The preceding evidence of Mr. Hall [sic] was admitted for the limited purpose of proving knowledge, motive, intent and preparation.
>
> The evidence cannot be considered by you as direct evidence that the defendant committed the crimes charged or that he acted in conformity with his character.

[¶ 16] During the trial, the district court gave the following instruction (with some minor variations that are not of any consequence) on five occasions:

> Ladies and gentlemen, from time to time the Court will allow the introduction of evidence that you might consider for one purpose but not another, and this is one of those times. And the Court will direct you at this time that the evidence produced here, particularly the items that were introduced in evidence by Agent Farmer, are admitted for the limited purpose of proving knowledge, motive, intent, or preparation with respect to the charge at issue. This evidence may not be considered by you as direct evidence that the Defendant committed the crimes charged or that he acted in conformity with his character here.

Hall did not object to the giving of the instruction or its form on any occasion. The thrust of Hall's contention is that the instruction suggests that his "character here" was that of a drug dealer and was, therefore, prejudicial to him.

[¶ 17] The standard of review to be applied in a circumstance such as this is well settled. A trial court has a duty to instruct the jury on the general principles of the law applicable to the case at hand. The trial court is afforded wide latitude in instructing the jury. So long as the instruc-

tions correctly state the law and the entire charge covers the issue, reversible error will not be found. Only where an appellant demonstrates that the instructions given confused or misled the jury with respect to the applicable principles of the law will prejudice be found. *Giles v. State,* 2004 WY 101, ¶ 14, 96 P.3d 1027, ¶ 14 (Wyo.2004).

[¶ 18] The instruction given may not be an ideal instruction; however, we conclude that Hall was not prejudiced by its use here, and it does not require reversal in these circumstances. W.R.E. 404(b) evidence continues to be a significant point of discussion in a great number of criminal appeals. In many of those cases, defense counsel have eschewed requesting limiting instructions, and there may be many sound reasons for doing so. W.Cr.P.J.I. 6.03 (1996) provides this very minimal guidance with respect to this question:

## 6.03 EVIDENCE ADMITTED FOR LIMITED PURPOSE

> The Court has admitted [the testimony of witness _____ that _____] [Exhibit ____] for the limited purpose of establishing _____.
>
> You must not consider this evidence for any purpose except the limited purpose for which it was admitted.

[¶ 19] In addition, we will set out below some examples of instructions that are used in other jurisdictions:

## PROOF OF OTHER CRIME—LIMITED ADMISSIBILITY OF EVIDENCE

> Evidence has been admitted tending to prove that the defendant committed (crimes) (a crime) other than the present crime charged. This evidence may be considered solely for the purpose of proving the defendant's (motive) (opportunity) (intent) (preparation) (plan) (knowledge) (identity) (absence of mistake or accident).

---

to rebut evidence that the victim was the first aggressor;

(3) *Character of witness.* Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b) *Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admis-*

*sible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.* [Emphasis added.]

Pattern Instructions for Kansas, Criminal 3d, § 52.06 (2004).

### Proof Of Other Offenses Or Conduct

[1] Evidence has been received that the defendant(s) [ (has) (have)] been involved in [(an offense) (offenses) (conduct)] other than [(that) (those)] charged in the [(indictment) (information) (complaint)].

[2] This evidence has been received on the issue[s] of the [(defendant's) (defendants')] [(identification) (presence) (intent) (motive) (design) (knowledge) (_____)] and may be considered by you only for that limited purpose.

[3] It is for you to determine [whether the defendant[s] [ (was) (were)] involved in [(that) (those)] [(offense) (offenses) (conduct)] and, if so,] what weight should be given to this evidence on the issue[s] of

1 Illinois Pattern Jury Instructions, IPI Criminal, § 3.14 (4th ed.2000).

### DEFENDANT'S PRIOR SIMILAR ACTS

### (Where Introduced to Prove an Issue Other Than Identity (Fed.R.Evid.404(b)))

You [are about to hear] [have heard] a certain category of evidence called ["other acts"] ["similar acts"] evidence. Here, that evidence is that the defendant (describe evidence the jury is about to hear or has heard). You may not use this ["other acts"] ["similar acts"] evidence to decide whether the defendant carried out the acts involved in the crime charged in the indictment. In order to consider ["other acts"] ["similar acts"] evidence at all, you must first unanimously find beyond a reasonable doubt, based on the rest of the evidence introduced, that the defendant carried out the acts involved in the crime charged in the indictment. If you make that finding, then you may consider the ["other acts"] ["similar acts"] evidence to decide (describe purpose under 404(b) for which evidence has been admitted.) [1] ["Other acts"] ["Similar acts"] evidence must be proven by a preponderance of the evidence; that is, you must find that the evidence is more likely true than not true. This is a lower standard than proof beyond a reasonable

doubt. If you find that this evidence is proven by a preponderance of the evidence, you should give it the weight and value you believe it is entitled to receive. If you find that it is not proven by a preponderance of the evidence, then you shall disregard such evidence.[3]

[Remember, even if you find that the defendant may have committed [a] similar [act] [acts] in the past, this is not evidence that [he][she] may have committed such an act in this case. You may not convict a person simply because you believe [he][she] committed similar acts in the past. The defendant is on trial only for the crime[s] charged, and you may consider the evidence of prior acts only on the issue of (state proper purpose under 404(b), e.g., intent, knowledge, motive.)] [2]

### Notes on Use

1. Use care in framing the language to be used in specifying the purpose for which the evidence can be used. See United States v. Mothershed, 859 F.2d 585, 588–89 (8th Cir.1988) (court should specify which component of Rule 404(b) the prior similar act evidence is relevant to and explain the relationship between the prior acts and proof of that proper component).

2. This paragraph should be given only upon request of the defendant. This portion of the instruction explains that prior similar act evidence is not admissible to prove propensity to commit crime, and defendant may want the jury so instructed. On the other hand, this portion of the instruction repeats reference to the prior act[s]. The trade-off between explanation and repetition should be made by the defendant in the first instance.

3. See generally, 1 L. Sand, J. Siffert, W. Loughlin & S. Reiss, Modern Federal Jury Instructions: Criminal, § 5.10 (2000); United States v. Frazier, 280 F.3d 835, 846 (8th Cir. 2002).

Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, Instruction No. 2.08 (2003).

### Similar Acts Evidence

### (Rule 404(b), FRE)

During the course of the trial, as you know from the instructions I gave you then, you heard evidence of acts of the Defendant which may be similar to those charged in the indictment, but which were committed on other occasions. You must

not consider any of this evidence in deciding if Defendant committed the acts charged in the indictment. However, you may consider this evidence for other, very limited, purposes.

If you find beyond a reasonable doubt from other evidence in this case that the Defendant did commit the acts charged in the indictment, then you may consider evidence of the similar acts allegedly committed on other occasions to determine

[whether the Defendant had the state of mind or intent necessary to commit the crime charged in the indictment]

or

[whether the Defendant acted according to a plan or in preparation for commission of a crime]

or

[whether the Defendant committed the acts for which the Defendant is on trial by accident or mistake].

*Pattern Jury Instructions (Criminal Cases)*, Prepared by the Committee on Pattern Jury Instructions of the Judicial Council of the Eleventh Circuit, Special Instruction No. 4 (2003).

[¶ 20] We hold that the district court's limiting instruction was not erroneous per se, that the jury was not misled or confused by the instruction, and that Hall was not prejudiced by its use in these circumstances. However, we do not recommend the instruction for use in future cases such as the one at hand.

### Admission of Schriner's Guilty Plea—Plain Error

[¶ 21] Hall contends that the district court committed plain error in allowing the admission by the State in its case-in-chief of evidence of Schriner's plea of guilty to the crime of operating a clandestine laboratory. The record is clear that her plea was *not* to the same crime as that with which Hall was charged. Rather, it was for separate and distinct conduct that occurred at another time and another place.[3]

[¶ 22] We apply this standard of review to these circumstances:

We have long held that "when two persons are indicted for separate offenses growing out of the same circumstances, the fact that one has pleaded guilty is inadmissible against the other." *Kwallek v. State,* 596 P.2d 1372, 1375 (Wyo.1979). The vitality of this rule is amply demonstrated by *Kwallek.* There, when a contemporaneous objection was lodged with respect to a conspirator's testimony, this Court had no difficulty holding that admission of that guilty plea evidence constituted prejudicial error presaging reversal of Mr. Kwallek's conviction and remand for a new trial. *Kwallek,* 596 P.2d at 1376. As Capshaw points out, Mr. Justice Jackson clearly explained the basis for this unequivocal rule:

It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together. If he is silent, he is taken to admit it and if, as often happens, co-defendants can be prodded into accusing or contradicting each other, they convict each other.

*Krulewitch v. United States,* 336 U.S. 440, 454, 69 S.Ct. 716, 723, 93 L.Ed. 790, 800 (1949) (Jackson, J., concurring in judgment and opinion).

In short, there can be no doubt that the appellant's right to a fair trial embraces his right not to be convicted, in whole or in part, upon the guilty pleas of his conspirators. *Ross v. State,* 930 P.2d 965, 968 (Wyo.1996).

*Capshaw v. State,* 11 P.3d 905, 911–12 (Wyo. 2000).

[¶ 23] Here, our analysis need not progress beyond the fact that Schriner's testimony was that she had entered a plea of guilty to a crime, identical in nature to Hall's, but one which had occurred at a wholly separate time and place. To the extent there was any initial confusion about whether her crime involved the same circumstances as that of

---

**3.** At the time the State broached the subject of Schriner's guilty plea, it was not made clear that it was for something other than the same inci-

dent for which Hall was charged. However, during cross-examination, it was made clear that that was not the case.

Hall's crime, that matter was fully clarified for the jury. Moreover, from the outset of this case Schriner's guilty plea and her very favorable "deal" with the State was at the heart of Hall's defense. We conclude that no error occurred with regard to this issue.

## CONCLUSION

[¶ 24] We hold that the district court should have permitted Hall to offer testimony that Schriner had, on previous occasions, threatened both Parker and Mikolash with exposure to the authorities so as to advance her own self-interest. Especially given the circumstances of this case, that evidence tended to expose her "bias" (in favor of improving her own circumstances within the criminal justice system) and was relevant to Hall's defense. However, we conclude that the error was harmless as more fully set out above. The district court's use of a W.R.E. 404(b) limiting instruction did not constitute plain error nor was Hall prejudiced by it use. The admission of evidence of Schriner's guilty plea was not error. The judgment and sentence of the district court are affirmed in all respects.