2007 WY 183

**Leo Paul LAWRENCE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–07–0065.**

Supreme Court of Wyoming.

Nov. 15, 2007.

Representing Appellant: Tina N. Kerin, Appellate Counsel, Wyoming State Public Defender Program, Cheyenne, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Michael M. Robinson, Senior Assistant Attorney General, Cheyenne, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   A jury convicted Leo Paul Lawrence of attempting to deliver methamphetamine in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) and § 35–7–1042.   On appeal, Mr. Lawrence claims the district court erred in admitting evidence of prior drug use by two defense witnesses.   We hold that the district court did not err in admitting the challenged evidence and affirm Mr. Lawrence's judgment and sentence.

## ISSUE

[¶ 2]   Mr. Lawrence presents this issue statement:

Did the trial court err in admitting irrelevant and improper character evidence of prior drug use by defense witnesses?

## FACTS

[¶ 3]   On the morning of December 15, 2005, Sarah Marchant contacted Ted Porter, a special agent with the Division of Criminal Investigation (DCI), and informed him she had arranged to purchase a quantity of methamphetamine from Mr. Lawrence.   Ms. Mar-

chant was fitted with a wire, supplied with two hundred dollars in recorded "buy" money and dropped off by Mr. Lawrence's residence. DCI Agent Porter parked along a nearby street, where he could listen to the transmission from the wire over a radio frequency. Two other DCI agents, Chris Brackin and Justin Mathson, were stationed in the area to monitor the transaction and provide assistance.

[¶ 4] Ms. Marchant approached Mr. Lawrence's residence on foot and knocked on the door. Mr. Lawrence let Ms. Marchant in and had her lock the door. Ms. Marchant asked for a "teener" (one sixteenth of an ounce of methamphetamine). A price of $140 was agreed upon, and Ms. Marchant placed the buy money on the table. Mr. Lawrence got out a scale and a yellow baggie, which Ms. Marchant estimated contained approximately a quarter ounce of methamphetamine, and placed them on the table. The transaction was interrupted by the arrival of Rebecca Pauly, a neighbor and friend of Mr. Lawrence's, and their mutual friend, Jeff Mathson, who is the brother of DCI Agent Justin Mathson. Ms. Pauly informed Mr. Lawrence that on their way to his house they had observed a suspicious person in a vehicle parked nearby. Based upon the description of the vehicle and driver, Mr. Lawrence identified the driver as DCI Agent Porter.

[¶ 5] Mr. Lawrence immediately turned on a police scanner. Jeff Mathson identified the voice of his brother, DCI Agent Justin Mathson, commenting about Jeff's arrival at Mr. Lawrence's residence. They also heard DCI Agent Justin Mathson inform DCI Agent Porter that he had probably been identified—"burnt" in the parlance used by DCI Agent Mathson. Ms. Marchant indicated that she did not want to "leave here with nothing." Mr. Lawrence replied that he did not want her to leave with it either. Ms. Pauly said they needed to get out of there, and Ms. Marchant agreed. Mr. Lawrence told all of them to go, and Ms. Marchant, Ms. Pauly, and Mr. Mathson left the residence. Ms. Marchant left without any drugs or the buy money.

[¶ 6] All three DCI agents returned to the police station with Ms. Marchant. Mr. Lawrence and his residence were left unobserved for approximately thirty minutes. After DCI Agent Justin Mathson returned to surveil the residence, he observed Mr. Lawrence drive up and go inside. Mr. Lawrence spent another thirty to forty-five minutes inside the residence before leaving again in his vehicle. At that time, the decision was made to arrest Mr. Lawrence. Search warrants were subsequently issued for Mr. Lawrence's residence and vehicle. The buy money was found in a metal container on the floor of Mr. Lawrence's vehicle. Two scales and two baggies, one of them yellow, were found inside the residence. The scales tested positive for methamphetamine residue. The yellow baggy contained 0.11 grams of methamphetamine, while the other had a trace quantity of the drug.

[¶ 7] At trial, Mr. Lawrence's defense was that there was only an attempted buy on Ms. Marchant's part, but that he did not have any methamphetamine and did not attempt to sell any to her. Ms. Pauly and Mr. Jeff Mathson both testified as defense witnesses that there were no drugs or paraphernalia in view when they were in the residence. The prosecution presented the testimony of several law enforcement witnesses, including DCI Agents Porter and Mathson, who described the controlled buy, the arrest of Mr. Lawrence, and the results of the searches of his residence and vehicle. An expert chemist from the State Crime Lab testified regarding the testing done on the scales and baggies recovered from Mr. Lawrence's residence and the identification of methamphetamine and methamphetamine residue recovered from those items. Ms. Marchant testified about the controlled buy and the aborting of the transaction upon discovery of the surveillance. The jury returned a verdict of guilty, and Mr. Lawrence was sentenced to a term of not less than two years nor more than seven years in the Wyoming State Penitentiary. He filed a timely notice of appeal.

[¶ 8] Additional facts specifically relevant to Mr. Lawrence's appellate issue will be provided in the discussion below.

## DISCUSSION

[¶ 9] Mr. Lawrence's error contentions are based on the admission of testimony relating to past drug usage by defense witnesses Rebecca Pauly and Jeff Mathson. The testimony relating to Jeff Mathson's drug usage came without defense objection from DCI Agent Justin Mathson, Jeff Mathson's brother, during the prosecution's case-in-chief and from Jeff Mathson himself over a relevance defense objection during the defense's case-in-chief. The testimony relating to Ms. Pauly's drug usage came over a nonspecific defense objection during the defense's case-in-chief.

[¶ 10] The standard of review applicable to these error contentions is familiar. Evidentiary rulings are within the sound discretion of the trial court and are not disturbed absent a clear abuse of that discretion. *Dysthe v. State*, 2003 WY 20, ¶ 16, 63 P.3d 875, 883 (Wyo.2003) (quoting *Lancaster v. State*, 2002 WY 45, ¶ 11, 43 P.3d 80, 87 (Wyo.2002); *Robinson v. State*, 11 P.3d 361, 367 (Wyo.2000)). "Determining whether the trial court abused its discretion involves the consideration of whether the court could reasonably conclude as it did, and whether it acted in an arbitrary or capricious manner." *Id.* The trial court's ruling is entitled to considerable deference and will not be reversed on appeal if a legitimate basis for the court's ruling exists. *Id.*

[¶ 11] To the extent no objection was interposed by defense counsel, the plain error standard applies. *Brown v. State*, 2004 WY 57, ¶ 20, 90 P.3d 98, 104 (Wyo.2004). That standard places the burden on Mr. Lawrence to demonstrate that "the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right." *Id.* (quoting *Compton v. State*, 931 P.2d 936, 939 (Wyo. 1997)).

### *Testimony relating to Jeff Mathson's drug use*

1. DCI Agent Justin Mathson's testimony

[¶ 12] DCI Agent Justin Mathson testified during the prosecution's case-in-chief. On direct examination, the DCI agent described his brother's arrival at Mr. Lawrence's residence and subsequently hearing Mr. Lawrence identify DCI Agent Porter over the wire's radio transmission. He described how the DCI agents returned to the station after Ms. Marchant left the residence, leaving Mr. Lawrence and his residence unobserved for approximately thirty minutes. DCI Agent Mathson also testified that when he returned to Mr. Lawrence's residence, he observed Mr. Lawrence returning to the residence in his vehicle, and that Mr. Lawrence remained inside the residence for approximately thirty to forty-five minutes before leaving in his vehicle again. DCI Agent Mathson further testified the decision to arrest Mr. Lawrence was made at that time. On cross-examination, Mr. Lawrence's counsel made the following inquiry:

Q: As far as your observations in this case, you said that you saw your brother leave Mr. Lawrence's residence with a female?

A: Correct.

Q: Did you know where Jeff was living at the time?

A: I did.

Q: Did anybody—did you do anything to try and follow up, like go interview him or have somebody else interview him at his place, go check at his place before the arrest of Mr. Lawrence?

A: Not that day, no.

Q: Any discussions with anybody about who's going to go follow up on these people and see what they saw, anything like that?

A: Later on, yes.

Q: Anything done—any discussions like that before the arrest of Mr. Lawrence?

A: Not that I can recall. There might have been some talk but I can't recall if there was or not.

Q: Okay. Do you know who that female was with Jeff?

A: I do.

Q: Who's that?

A: I think her name is Rebecca Pauly.

Q: Okay. Are you—do you talk to Jeff? I mean, are you friends with him?

A: We do not communicate or I haven't seen him for several months.

Q: Yeah. **Are there bad feelings between you two?**

A: **I just don't agree with his life-style, so I just choose not to associate with him.**

Q: He's working in the oil fields?

A: He is.

(Emphasis added.) The remainder of cross-examination focused on the gap in time when Mr. Lawrence's residence was not under surveillance, the decision to arrest, and the circumstances of the arrest.

[¶ 13] On redirect, the prosecutor asked DCI Agent Mathson to explain the answer defense counsel had elicited when asking about his relationship with his brother:

Q: What do you mean by you don't agree with Jeff's life-style?

A: From—well, I'm just assuming the places he hangs around, the places he goes, **I'm assuming that he uses drugs.** And he still lives at home with family members. That kind of does not set well with me, either, so . . . .

(Emphasis added.) Because Mr. Lawrence's trial counsel did not object to the "life-style" question and answer, this Court reviews his appellate error contention for plain error. The parties agree the record clearly shows the testimony to which Mr. Lawrence now objects. This Court has carefully read Mr. Lawrence's appellate brief to identify the clear and unequivocal rule of evidence he claims was violated when this testimony was admitted. At one point in his brief, after briefly recounting the testimonies of DCI Agent Mathson, Rebecca Pauly, and Jeff Mathson of which he complains, he asserts, first, that "all the above evidence was improper because it was irrelevant" and under W.R.E. 402 irrelevant evidence is inadmissible, and second, that "these examinations by the prosecutor constituted introduction of improper character evidence" inadmissible under W.R.E. 608(b) (specific instances of conduct) and *Blumhagen v. State,* 11 P.3d 889 (Wyo.2000). At another point in his brief when specifically addressing only DCI Agent Mathson's testimony that he assumes his

brother uses drugs, Mr. Lawrence again identifies W.R.E. 608(b) and *Blumhagen.* The extent of his cogent argument on that basis is "[t]hat rule was violated when the trial court allowed Justin Mathson to put forth his opinion that his brother uses 'drugs.'" At neither point in his brief does Mr. Lawrence quote the text of W.R.E. 608(b) and explain its application to DCI Agent Mathson's utterance. Equally missing is an explanation of the application of *Blumhagen* to DCI Agent Mathson's utterance. The extent of Mr. Lawrence's "irrelevance" argument about that utterance is simply that it was not "relevant to proving whether Mr. Lawrence attempted to deliver a controlled substance to Ms. Merchant."

[¶ 14] Responding to Mr. Lawrence's complaint about DCI Agent Mathson's utterance, the State counters that Mr. Lawrence's trial counsel "opened the door" to the prosecutor's redirect question asking the witness to explain his disagreement with his brother's lifestyle which was revealed by defense counsel's earlier cross-examination. The State cites *White v. State,* 2003 WY 163, ¶ 11, 80 P.3d 642, 648 (Wyo.2003):

"This Court has recognized that a defendant may open the door to otherwise inadmissible testimony when he inquires about a particular subject," including evidence of prior criminal misconduct. *Gayler v. State,* 957 P.2d 855, 858 (Wyo.1998); *see also Espinoza v. State,* 969 P.2d 542, 546 (Wyo.1998), *cert. denied,* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 52 (1999). "When the defendant initiates a line of questioning, the prosecutor is entitled to make a permissible inquiry without crossing into prosecutorial overkill." *Espinoza,* 969 P.2d at 546.

It is usually a basic function of redirect examination to allow a witness to explain his testimony elicited on cross-examination. . . . The opening of the door concept, however, reaches further and is an extension of that familiar rule. Succinctly stated, the "opening the door" rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not competent but relevant cannot complain

if his adversary is also allowed to avail himself of the opening within its scope.

*Sanville v. State*, 593 P.2d 1340, 1344 (Wyo.1979)

This Court agrees with the State that this was a permissible question for redirect in the circumstances. The prosecutor limited his inquiry to that single question, thus "the prosecutor's redirect examination did not cross the line between permissible inquiry and prosecutorial overkill." *White*, ¶ 12, 80 P.3d at 648–49. Once Mr. Lawrence's counsel opened the door to this line of questioning, he could not legitimately complain when the prosecutor went through it and asked the witness to clarify his cross-examination testimony.

[¶ 15] Mr. Lawrence's argument alleging that DCI Agent Mathson's utterance constituted improper character evidence under W.R.E. 608(b) and *Blumhagen* lacks cogency. He fails to quote the text of the rule of evidence and fails to provide legal analysis of either the rule or the *Blumhagen* holding and their application to the DCI agent's utterance. We decline to review this ground without cogent argument. *Marshall v. State*, 2005 WY 164, ¶ 12, 125 P.3d 269, 274 (Wyo. 2005).

2. Jeff Mathson's testimony

[¶ 16] Jeff Mathson testified in Mr. Lawrence's case-in-chief. On direct examination, defense counsel questioned Mr. Mathson regarding his knowledge of Ms. Pauly's drug use. Mr. Mathson testified he did not have any direct knowledge of whether Ms. Pauly was into methamphetamine in December of 2005. He also testified he had not personally observed Ms. Pauly using methamphetamine during the three months preceding December 2005 or since that time. With respect to his own drug use, Mr. Mathson declared that he was not a drug user and had not used methamphetamine in September, October, November, or December of 2005 or since then. Direct examination then moved to foundational questions similar to those that had been asked earlier of Ms. Pauly and, likewise, Mr. Mathson admitted he was friends with Mr. Lawrence but stated that he would not lie for him and had not

coordinated his testimony with other witnesses. On cross-examination, the prosecutor asked a single question of Mr. Mathson regarding his drug use: "Now, I noticed that you were kind of asked to count back a few months if you've had any use of meth. Isn't it true that you've admitted using meth up to at least six months before—[?]" Mr. Lawrence's counsel interrupted with a relevance objection which the trial judge overruled, saying, "It was raised. It was raised for his credibility purpose. Overruled." The prosecutor repeated the question and Jeff Mathson answered, "Yes."

[¶ 17] Mr. Lawrence's appellate argument challenging the trial judge's relevance ruling is that Jeff Mathson's drug use "up to at least six months before" was irrelevant to proving whether Mr. Lawrence attempted to deliver a controlled substance to Ms. Marchant on December 15, 2005; W.R.E. 402 provides that irrelevant evidence is inadmissible; therefore, the trial judge abused his discretion in admitting that evidence. The State's rebuttal to this challenge is two-fold. First, the State asserts that Mr. Lawrence's counsel "opened the door" to this evidence by eliciting the witness's testimony that he had not used drugs for a three-month period before December 15, 2005. Second, the State points out that it served to counter the inference raised during the witness's direct examination that he was an impartial witness who had no connection with the drug culture. The State correctly refers this Court to this passage:

A more particular attack on the witness' credibility is affected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, *Evidence* § 940, p. 775 (Chadbourn rev.1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*

360 U.S. 474, 496, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

*Hannon v. State,* 2004 WY 8, ¶ 16, 84 P.3d 320, 329–30 (Wyo.2004)(quoting *Davis v. Alaska,* 415 U.S. 308, 317–18, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)); *see also State v. Slane,* 48 Wyo. 1, 13, 41 P.2d 269, 273 (1935) ("interest, relationship, bias, and corrupt testimonial intent may always be shown either on cross-examination or by extrinsic testimony").

[¶ 18]   We agree with the State's arguments on this issue and hold that the trial judge's relevancy ruling was correct. That does not end the matter, however, because Mr. Lawrence challenges the admissibility of Mr. Mathson's prior drug use on an evidentiary ground not raised at trial, namely, W.R.E. 608(b).   This Court has closely read Mr. Lawrence's appellate brief to identify a specific plain error analysis of this specific ground as applied to this specific evidence. It is not to be found.   Invoking W.R.E. 608(b), without quoting the rule's text, and *Blumhagen,* Mr. Lawrence concludes that the prosecutor's cross-examination question about Jeff Mathson's drug use "at least six months before" had only the purpose to portray Mr. Mathson as an "unbelievable reprobate" and to imply that he was not credible in his testimony.

[¶ 19]   In response to Mr. Lawrence's argument, the State, after quoting the text of W.R.E. 608(b), notes that the purpose of the rule is to prevent improper witness impeachment through "extrinsic evidence" of that witness's specific conduct, citing *Solis v. State,* 981 P.2d 34, 37 (Wyo.1999). The State correctly observes that the prosecutor elicited the testimony through cross-examination of the very witness whose impartiality was in question, not through the extrinsic evidence of another witness whose testimony was attacking the credibility of an opposing witness whose impartiality was in question.   In *Blumhagen,* a confidential informant testified in the prosecution's case-in-chief about the accused's delivery of drugs, but was not examined, either on direct or cross-examination, about her own drug use.   11 P.3d at 892.   After the prosecution rested, the accused's counsel wanted to call a witness to testify about the confidential informant's prior drug use; to this end, the accused's counsel called this witness to testify in an offer of proof on that matter.   The trial court refused to allow that witness to testify before the jury.   *Id.* at 893.   On appeal, this Court affirmed the trial court's refusal, holding that such testimony "amounted to extrinsic evidence concerning a specific instance of the confidential informant's conduct and was not, therefore, admissible to attack her credibility." *Id.* The State correctly distinguishes the instant case from *Blumhagen;* Jeff Mathson's testimony about his own drug use was not extrinsic evidence; rather, it was direct evidence elicited by permissible cross-examination following up evidence revealed on the direct examination by the accused's counsel.

[¶ 20]   We agree with the State that there is a distinction between evidence that impeaches by proof of a witness's character or disposition for veracity, or the lack thereof, and evidence which establishes a lack of credibility through a showing of such things as bias or undue influence.   *Gist v. State,* 766 P.2d 1149, 1151–52 (Wyo.1988) (quoting 3 D. Louisell and C. Mueller, Federal Evidence § 307, pp. 127–28 (1988 supp.)).   The admission of evidence for the latter purpose is not controlled by W.R.E. 608(b).   *Hall v. State,* 2005 WY 35, ¶¶ 8–9, 14, 109 P.3d 499, 503–04, 506 (Wyo.2005) (where the defendant had been charged with running a clandestine drug lab, this Court held that it was error for the district court, pursuant to W.R.E. 608(b), to deny admission of extrinsic evidence that a co-conspirator had made false accusations of drug offenses against other people in the past, as such was evidence that the co-conspirator had a motive or self-interest to slant her testimony).   Moreover, as the State points out, the advisory committee's note to F.R.E. 608, which is substantively identical to the Wyoming provision, states that evidence of bias or interest is not an attack on the witness's character for truthfulness and, thus, the admission of such evidence is not governed by F.R.E. 608.   F.R.E. 608 advisory committee's note (evidence of bias governed by Rules 402 and 403); *United States v. Ray,* 731 F.2d 1361, 1364 (9th Cir.1984). We agree with that note.

■ [¶ 21] Clearly, witness bias is a proper subject for impeachment, both at common law and after adoption of the rules of evidence. *Hall*, ¶ 10, 109 P.3d at 504 (quoting *United States v. Abel*, 469 U.S. 45, 51–52, 105 S.Ct. 465, 468–69, 83 L.Ed.2d 450 (1984)); *see also United States v. Calle*, 822 F.2d 1016, 1020–1021 (11th Cir.1987); *Ray*, 731 F.2d at 1363–65; 81 Am.Jur.2d *Witnesses* § 842 (2004) ("the rule encompasses all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his or her testimony for the purpose of helping to establish only one side of the cause").

■ [¶ 22] We agree with the State's observation that the thrust of Mr. Lawrence's direct examination of Jeff Mathson was that he had no bias or interest in the case and was an impartial witness as he was not a drug user and had no connection with the drug culture. The prosecutor's cross-examination question and Mr. Mathson's answer revealed evidence from which the jury could reasonably infer that he was not an impartial witness. Evidence of a witness's partiality is always relevant. *Hannon*, ¶ 16, 84 P.3d at 329–30. We hold that the admission of Jeff Mathson's prior drug use was not plain error.

*Testimony relating to Rebecca Pauly's drug use*

[¶ 23] After the prosecution rested its case, Mr. Lawrence called Ms. Pauly in his defense. Mr. Lawrence's counsel began his direct examination of Ms. Pauly by asking a series of foundational questions that established that Ms. Pauly lived a block from Mr. Lawrence; she had known him for about three to four years and had visited his residence about ten times during that period; she was a separated mother of three children; she was a cancer survivor and a past victim of domestic violence and sexual assault. Ms. Pauly also testified that Jeff Mathson was her best friend and, over the prosecution's objection, that he was a "very responsible" and "good person." Mr. Lawrence's counsel also elicited testimony from Ms. Pauly that despite her friendship with Mr. Lawrence she would not lie for him, she had not talked to any other witnesses in the case or tried to coordinate her testimony with theirs, and her testimony was the truth. Mr. Lawrence's counsel then proceeded to the heart of the defense, which was testimony from Ms. Pauly that she had not seen any drugs, scales, weapons, money, or anything else evidencing a drug transaction was taking place at Mr. Lawrence's home the day of his arrest.

[¶ 24] The prosecutor began his cross-examination of Ms. Pauly by asking, "Now, you've admitted that you have had a meth problem in the past, is that correct?" Mr. Lawrence's counsel said, "Objection, this is a—" but was interrupted before stating the specific ground of the objection by the trial judge, who said, "Overruled. You raised the subject. Go ahead, overruled." Ms. Pauly then indicated that she had not admitted such a problem in the past, and the following series of questions and answers ensued:

Q: Okay. Are you sure?

A: I'm positive.

Q: Okay. Do you recall testifying on June 14 of this year?

A: Yes. (Pause)

Q: Okay. May I approach the witness?

[The Court]: Yes. Tell counsel what pages you're referring to.

. . . .

Q: If you read that, do you think it will refresh your memory a little? (Pause)

A: Yeah. I said it, everything's that's here.

Q: Okay. So you admit that you had an issue with meth in the past?

A: No.

Q: Okay.

A: I—that's not what I'm saying.

Q: Okay. That you had used meth in the past?

A: Yes.

Q: And that as recently—you admit to as recently as November of 2004 using meth?

A: One time.

Q: Okay. But that's not a problem?

A: No.

Mr. Lawrence's counsel then on redirect examination had Ms. Pauly read the totality of

her prior statement about her methamphetamine use, which was that she had used methamphetamine when she was nineteen (at the time of trial she was apparently thirty-six) and that she had relapsed once, when her husband had beaten her, in November of 2002.

[¶ 25] In Mr. Lawrence's appellate argument on this issue, he makes the same argument as he made on the issue of Jeff Mathson's testimony. In response, the State counters with the same argument it made on that issue also, with the exception of the "opening the door" discussion. For the same reasons we held that the trial judge did not err in admitting Jeff Mathson's prior drug use testimony, we also hold that the trial judge did not err in admitting Ms. Pauly's prior drug use testimony. Her cross-examination testimony was not extrinsic evidence and W.R.E. 608(b) does not apply; rather, her testimony revealed evidence from which the jury could reasonably infer that she was not an impartial witness, in contradiction to her testimony on direct examination. We reiterate that evidence of a witness's partiality is always relevant.

[¶ 26] We affirm Mr. Lawrence's judgment and sentence.