2010 WY 11

**William Tandy RODEN, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–08–0233.

Supreme Court of Wyoming.

Feb. 5, 2010.

Rehearing Denied March 9, 2010.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel, Wyoming Public Defender's Office; Diane E. Courselle, Faculty Director, Zane A. Gilmer, Student Intern, and Jodanna L. Haskins, Student Intern, of the Defender Aid Program. Argument by Ms. Haskins.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, BURKE, JJ.

GOLDEN, Justice.

[¶ 1] A jury convicted Appellant William T. Roden of conspiracy to commit aggravated robbery, two counts of aggravated robbery, and two counts of aggravated assault and battery. Roden seeks reversal of those convictions, asserting numerous evidentiary errors at trial. We will affirm.

## ISSUES

[¶ 2] Roden presents the following issues for our review:

I. The State's introduction of alleged other bad acts by William Roden, despite its failure to notify the defense of its intent to use 404(b) evidence, resulted in reversible error.

II. The trial court committed plain error by allowing the State to elicit testimony from witnesses that they pled guilty to charges similar to that for which William Roden was on trial and which arose out of the same criminal transaction.

## FACTS

[¶3] On September 9, 2007, Ryan Ott gave his girlfriend, Keyla Hodges, $5,000.00 he had received from Roden, along with $5,000.00 of his own money, and sent her to buy a pound of methamphetamine. When Hodges returned an hour later, she had neither the money nor the drugs in her possession. This incited Ott to devise a plan to recover either the money or the drugs.

[¶4] Ott had Hodges show him where the alleged failed drug deal occurred. After identifying the location, Ott went to Roden's shop to enlist his assistance in the recovery. Roden and Ott discussed their options and then drove to the home they believed belonged to Nathan Luth and Dusty Henderson—the two men from whom Hodges claimed she had attempted to purchase the methamphetamine earlier that day. They then broke a window and entered the home, only to discover they had the wrong residence.

[¶5] After realizing their mistake, Roden and Ott left the area and picked up Hodges, who then assisted the men in locating the correct house.[1] Upon arriving at the location, they parked their vehicle across the street and discussed their plans for retrieving the money. During that discussion, Hodges described the layout of the house and the possible location of the occupants. She also informed the men there was a sword located near the front door and that there were dogs in the house. Thereafter, Ott armed himself with a shotgun, and the two men, both disguised in bandanas and hoodies, exited the vehicle and entered the residence.

[¶6] Once inside, Roden grabbed the sword Hodges had described. The two men then went to Henderson's bedroom, kicked in the door, and ordered Henderson to follow them. In the process, Ott struck Henderson in the forehead with the barrel of the shotgun, causing a large gash that ultimately required fourteen stitches. The men then proceeded across the hall to Luth's bedroom, where they also kicked in the door, struck Luth in the head with the shotgun, and ordered him to accompany them. Roden and Ott escorted the men downstairs to the living room and directed them to lie down on the floor. While Ott held Luth and Henderson at gunpoint, Roden ransacked the house to find the money. When Roden's efforts proved unsuccessful, the men demanded the location of the money and hit, kicked and threatened Luth and Henderson with the shotgun and sword. After a period of time, Roden and Ott realized that Luth and Henderson did not have the money and left the residence, taking with them, among other things, the sword, Luth's cell phone and iPod, and drug paraphernalia. The men returned to their vehicle, where Hodges was waiting, and the threesome drove away from the scene.

[¶7] Ott and Hodges were arrested a few weeks later in South Dakota. During an interview following her arrest, Hodges implicated herself, as well as Roden and Ott, in the robbery of Luth and Henderson, and provided police with the location of the stolen sword. Based on Hodges' statements and the post-robbery investigation, the State charged Roden with conspiracy to commit aggravated robbery in violation of Wyo. Stat. Ann. §§ 6–1–303(a) and 6–2–401(a) and (c) (LexisNexis 2009), two counts of aggravated robbery under Wyo. Stat. Ann. § 6–2–401(a) and (c) (LexisNexis 2009), and two counts of aggravated assault and battery under Wyo. Stat. Ann. § 6–2–502(a)(iii) and (b) (LexisNexis 2009). A jury later convicted Roden on all five counts, and the district court imposed an overall prison sentence of thirty to fifty years. This appeal followed. Additional facts will be set forth as needed in our discussion of the issues.

## STANDARD OF REVIEW

[¶8] Where an objection is posed, we review a trial court's evidentiary ruling for an abuse of discretion.

---

1. The events that transpired at the Luth and Henderson residence occurred during the late hours of September 9 or the early morning hours of September 10, 2007.

A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State*, 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006).

*Leyva v. State*, 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007). If we conclude the trial court erred in admitting evidence, we must then consider whether the error was prejudicial or harmless. W.R.A.P. 9.04.

[¶ 9] When no objection is lodged in the trial court to the evidence challenged on appeal, we apply our plain error standard of review. Plain error will not be found unless: (1) the record clearly shows the alleged error; (2) the party claiming the error demonstrates a violation of a clear and unequivocal rule of law; and (3) the party proves the violation adversely affected a substantial right resulting in material prejudice. *Miller v. State*, 2006 WY 17, ¶ 15, 127 P.3d 793, 797–98 (Wyo.2006). Whether an error is reviewed on the basis of plain error or on the basis of harmless error, our primary focus is whether the appellant's case was so seriously prejudiced by the error that he was denied a fair trial. *Butcher v. State*, 2005 WY 146, ¶ 38, 123 P.3d 543, 554 (Wyo.2005); *Lopez v. State*, 2004 WY 103, ¶ 56, 98 P.3d 143, 157 (Wyo.2004). This involves a determination as to whether, "based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Lopez*, ¶ 56, 98 P.3d at 157. The burden of establishing prejudicial error rests upon the appellant. *Butcher*, ¶ 39, 123 P.3d at 554.

## DISCUSSION

### *W.R.E. 404(b) evidence*

[¶ 10] At the time of Roden's trial, W.R.E. 404(b) provided: [2]

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Under the rule, evidence of specific instances of misconduct is admissible if it serves to prove matters other than a defendant's bad character. *Bromley v. State*, 2007 WY 20, ¶ 9, 150 P.3d 1202, 1207 (Wyo.2007); *Gleason v. State*, 2002 WY 161, ¶ 17, 57 P.3d 332, 339 (Wyo.2002). The list of allowable purposes for which evidence of other crimes, wrongs, or acts may be admissible under W.R.E. 404(b) is not exclusive. *Gleason*, ¶ 18, 57 P.3d at 340. The "core principle of W.R.E. 404(b) is that the defendant in a criminal case 'should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged.'" *Leyva*, ¶ 19, 165 P.3d at 452 (quoting 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed.2007)).

[¶ 11] Relying on W.R.E. 404(b), Roden asserts reversible error occurred when the State, on three separate occasions, elicited testimony concerning other instances of misconduct. Specifically, Roden takes exception to testimony that: (1) he and Ott previously bought and sold methamphetamine together; (2) he and Ott were well acquainted from past instances of selling drugs and stolen goods; and (3) he and Hodges previously used drugs together in a Rapid City, South Dakota, motel room. Roden contends he timely objected to the introduction of that evidence via his filing of a pretrial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b), citing *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002) (holding that where a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as a timely objection to the introduction of such evidence); *see also Williams v. State*, 2004 WY 117, ¶ 12, 99 P.3d

---

2. The rule has since been amended to require the State, upon request by the accused, to "provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

432, 439 (Wyo.2004). He further contends his demand for notice triggered a mandatory procedure wherein the State was required to provide the district court with sufficient evidence to satisfy the test for admissibility articulated in *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988), and adopted by this Court in *Vigil v. State,* 926 P.2d 351, 355 (Wyo.1996), which the State failed to do prior to the introduction of the challenged testimony.

[¶ 12] At the outset, we cannot agree with Roden that his pretrial demand for notice constituted a proper objection to the challenged testimony. If a demand for notice is to be treated as an objection to the admissibility of W.R.E. 404(b) evidence, it follows that the demand, like other evidentiary objections, must be made in the trial court. Here, the demand was filed in the circuit court rather than the district court with exclusive jurisdiction over the criminal trial. Because Roden failed to file his demand in the court of competent jurisdiction, the demand was a nullity as pertains to the district court proceedings. Having reached this conclusion, and noting that Roden did not otherwise object to the challenged testimony at trial, we are now left to ponder whether plain error occurred in its admission. For the reasons discussed below, we conclude it did not.

[¶ 13] Roden first alleges error occurred in the State's elicitation of testimony from Ott indicating Roden "had previously been involved with Ott buying and selling methamphetamine." We have meticulously reviewed the portions of trial transcript cited by Roden on this contention of error, but we are unable to find such testimony offered by Ott. Since the challenged testimony is not clearly reflected in the record, we have no evidentiary basis upon which to assess whether plain error occurred in this instance.

[¶ 14] Roden's second instance of error concerns Ott's testimony that he was acquainted with Roden from past instances of selling drugs and stolen goods. The State asserts that no error can be predicated on this testimony because Roden opened the door to the prosecutor's line of questioning

that resulted in its introduction. The State cites *Lawrence v. State,* 2007 WY 183, ¶ 14, 171 P.3d 517, 521–22 (Wyo.2007), wherein we stated:

"This Court has recognized that a defendant may open the door to otherwise inadmissible testimony when he inquires about a particular subject," including evidence of prior criminal misconduct. *Gayler v. State,* 957 P.2d 855, 858 (Wyo.1998); *see also Espinoza v. State,* 969 P.2d 542, 546 (Wyo.1998), *cert. denied,* 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 52 (1999). "When the defendant initiates a line of questioning, the prosecutor is entitled to make a permissible inquiry without crossing into prosecutorial overkill." *Espinoza,* 969 P.2d at 546.

It is usually a basic function of redirect examination to allow a witness to explain his testimony elicited on cross-examination.... The opening of the door concept, however, reaches further and is an extension of that familiar rule. Succinctly stated, the "opening the door" rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not competent but relevant cannot complain if his adversary is also allowed to avail himself of the opening within its scope.

*Sanville v. State,* 593 P.2d 1340, 1344 (Wyo.1979).

[¶ 15] In analyzing Roden's complaint and the State's response, we must consider how the challenged testimony arose, placing it in proper context. The record reveals Ott testified during the State's case-in-chief that, on September 9, 2007, Roden gave him $5,000.00 for the purpose of purchasing a pound of methamphetamine. During cross-examination, defense counsel attempted to discredit Ott's testimony by asking the following questions:

Q. Going back to the early days of September, 2007, just before the robbery, how long had you known Billie Roden?

A. A couple of months.

Q. You had known him a couple of months, and yet he gave you $5,000 in cash to go make a drug deal; is that correct?

A. Yes, sir.

In response to defense counsel's cross-examination, the prosecutor elicited the following information on redirect examination:

Q. Now, [defense counsel] talked to you about the fact that it was puzzling that you would receive $5,000 from Mr. Roden on September 9th, in cash to get methamphetamine. At that point in time, did you trust Mr. Roden?

A. Yes, sir.

Q. Did Mr. Roden appear to trust you?

A. Yes, sir.

Q. Why was that?

A. Because we had been in business doing things together for a couple months, and we made a lot of money together.

Q. Had the two of you been together almost continually for that two months?

A. Yes, sir.

Q. And when you say you made a lot of money together, would you describe for us the activity that you and Mr. Roden engaged in to make that money?

A. Selling drugs and stealing things. Or I would steal things and he would sell them.

Q. And was it unusual for you to give money to Mr. Roden?

A. No, sir.

Q. Was it unusual for Mr. Roden to give you money?

A. No, sir.

Q. Was $5,000 an unusual amount of money for the two of you to exchange?

A. No, sir.

[¶ 16] After careful consideration, we must agree with the State that the prosecutor's line of questioning on redirect was permissible under the circumstances. When Roden's trial counsel made an issue of the plausibility of Ott's testimony concerning the nature of the money exchange, he opened the door for the prosecutor to inquire as to the nature and extent of Roden's and Ott's relationship, including information relating to the types of transactions in which the two men engaged. The prosecutor's line of questioning merely sought to clarify their relationship and to refute defense counsel's implica-

tion that it was unlikely Roden would have given Ott $5,000.00 for a drug deal after knowing him for only a few months. The prosecutor limited his inquiry to the amount of information necessary to demonstrate why it was not uncommon for Ott and Roden to exchange large sums of money, and "did not cross the line between permissible inquiry and prosecutorial overkill." *Lawrence*, ¶ 14, 171 P.3d at 522. We find no error in this instance.

[¶ 17] Roden's final contention of error stems from Hodges' testimony that she recognized him from a prior encounter in which they used drugs together in a Rapid City, South Dakota, motel room. That testimony arose during the following exchange on direct examination:

Q. Now earlier in your testimony you told us that initially when you saw the second person, you didn't know who they [sic] were?

A. Yes.

Q. And then at some point later you learned who that person was?

A. Yes.

Q. When did that happen?

A. It happened after we had jumped in the pickup. After they jumped in the pickup from the robbery.

Q. Describe for us what happened at that time.

A. Um, I said, well, it is about time I introduced myself. I am Keyla. And the guy in the passenger seat turns around and he goes, yeah, I know who you are. I said, oh yeah? And he goes yeah. And he takes off his mask and bandana around [his] eyes and mouth, and it was William Roden. And I had known him previously from hanging out with Dusty and me. And we had gotten high in a motel in a Ramada motel in Rapid City.

[¶ 18] We agree Hodges' testimony about the drug use was evidence of uncharged misconduct. However, we disagree it was intentionally solicited by the prosecutor. As indicated, the prosecutor simply asked Hodges about the timeline and the events giving rise to her identification of Roden as Ott's com-

panion in the robbery. The supplemental information about the drug use was a spontaneous offering by Hodges, seemingly designed to support her identification of Roden. In light of the facts, we decline to fault the prosecutor.

[¶ 19] Even assuming error occurred in this instance, we are unable to discern any resulting prejudice. The testimony was isolated, and the South Dakota incident was not further mentioned during the trial. Additionally, the jury had before it other evidence of Roden's drug use. Thus, the challenged testimony was merely cumulative. In sum, we do not believe this infinitesimal testimony had a substantial effect on the jury's determination of Roden's guilt.

### Testimony of Convictions

[¶ 20] In the State's case-in-chief, the prosecutor elicited testimony from Ott that he had been convicted of grand larceny and armed robbery. Similarly, the prosecutor elicited testimony from Hodges regarding the fact she had pled guilty to the crime of robbery. Hodges testified that her conviction stemmed from a robbery that occurred on September 10 in which Roden was a participant. Roden contends it was reversible error for the prosecutor to elicit such testimony from Ott and Hodges. According to Roden, the testimony impermissibly suggested to the jury that it could infer his guilt on the charged crimes because his confederates had been convicted of offenses arising out of the same circumstances.

[¶ 21] Roden acknowledges he did not object to the challenged testimony and, consequently, bears the burden of demonstrating plain error to succeed on his claim. As previously discussed, plain error requires Roden to show, by reference to the record, a violation of a clear and unequivocal rule of law and material prejudice. *Miller,* ¶ 15, 127 P.3d at 797–98; *see also Capshaw v. State,* 11 P.3d 905, 911 (Wyo.2000); *Mazurek v. State,* 10 P.3d 531, 535 (Wyo.2000). In order to show the error was prejudicial, warranting reversal of his convictions, Roden must demonstrate he was not allowed a trial on its own merits. *Mazurek,* 10 P.3d at 536.

[¶ 22] We need spend little time on the first prong of the plain error test as the record clearly reflects the testimony alleged as error. As to the second prong, Roden finds the clear and unequivocal rule of law he claims was violated in *Kwallek v. State,* 596 P.2d 1372 (Wyo.1979). The rule in *Kwallek* upon which he relies states that "when two persons are indicted for separate offenses growing out of the same circumstance, the fact that one has pleaded guilty is inadmissible against the other." *Id.* at 1375. The rationale for the rule is that evidence of a witness' guilt for an offense arising out of the circumstances leading to the defendant's trial implies the defendant is also guilty. Such an implication violates a defendant's right to a trial on its own merits. *Id.* at 1375–76. In short, the *Kwallek* rule precludes the State from presenting in its case-in-chief evidence of a co-conspirator's/accomplice's guilty plea or conviction on a related offense as circumstantial evidence of the defendant's guilt.

[¶ 23] In this case, we have no trouble concluding Hodges' testimony violated the clear and unequivocal rule set forth in *Kwallek.* Her testimony explicitly linked her robbery conviction to the same robbery for which Roden was on trial. However, we cannot reach the same conclusion about Ott's testimony. His testimony, as elicited by the prosecutor, merely indicated he had been convicted of grand larceny and armed robbery. Ott did not testify on direct examination that his convictions were related to, or stemmed from, the same circumstances underlying the charges Roden was defending against at trial. Under these circumstances, we cannot conclude a clear transgression of the *Kwallek* rule occurred with respect to Ott's testimony.

[¶ 24] Regardless of the propriety of both Ott's and Hodges' testimony, applying the factors set forth in *Mazurek,* 10 P.3d at 539, we agree with the State that Roden has not shown material prejudice resulting from its admission. The testimony was not extensive, and proof of Roden's guilt was substantial. We find the strength of the State's evidence would have sufficed even in the absence of the challenged testimony. Additionally, we can plainly gather from the record that the

conviction evidence was not introduced for an improper purpose or deliberately placed before the jury to divert attention to extraneous matters. We also note the convictions were not improperly emphasized by the prosecutor or otherwise used as substantive evidence of Roden's guilt.[3] Consequently, we find it unlikely that the jury took undue notice of that evidence in assessing Roden's guilt or innocence on the charged crimes.

[¶ 25] Further, we recognize, as we did in *Urrutia v. State*, 924 P.2d 965, 970 (Wyo. 1996), that, because the jury's attention was not inordinately directed to the improper evidence, this case is distinguishable from *Kwallek*. *See also Pendleton v. State*, 2008 WY 36, ¶¶ 29–30, 180 P.3d 212, 221–22 (Wyo. 2008); *Adams v. State*, 2003 WY 152, ¶ 30, 79 P.3d 526, 535 (Wyo.2003); *Black v. State*, 2002 WY 72, ¶ 42, 46 P.3d 298, 306 (Wyo. 2002). In *Kwallek*, we concluded prejudice resulted because the trial court twice overruled the defendant's objection concerning the admission of his co-conspirator's guilty plea and, consequently, the jury may have been left with an improper impression by the judge's rulings. We concluded it was probable

> the jury was left with the impression that, since the total evidence connected the defendant with [his co-conspirator] in the altercation with [the victim], the court must have wanted the jury to understand that, since [the co-conspirator] had pleaded guilty, it must be that the defendant is also guilty.

*Kwallek*, 596 P.2d at 1376. Obviously, such did not occur in this case, as no objections were posed by Roden to the admission of Ott's and Hodges' testimony.

[¶ 26] After careful consideration of all the evidence, we are convinced the error asserted by Roden was harmless. We therefore hold no plain error occurred in this instance warranting reversal of Roden's convictions.

**3.** Roden particularly points to the prosecutor's remarks in closing argument that Ott admitted to the robbery and that "it is now the time for this jury to hold [Roden] accountable for what he has done" as evidence the convictions were impermissibly used as substantive evidence of his guilt.

## CONCLUSION

[¶ 27] Roden has failed to convince this Court that reversible error exists with respect to any of the issues raised in this appeal. Affirmed.

However, when the remarks are viewed in proper context, it is clear the prosecutor was not referring to Ott's convictions but, rather, to Ott's trial testimony wherein he implicated both himself and Roden in this robbery.