2010 WY 159

**Krystal Dawn NELSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. S–10–0085.

Supreme Court of Wyoming.

Dec. 8, 2010.

Representing Appellant: Diane Lozano, State Public Defender, PDP; Tina Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; John S. Burbridge, Senior Assistant Attorney General; Affie B. Ellis, Assistant Attorney General. Argument by Ms. Ellis.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

KITE, Chief Justice.

[¶ 1] A jury convicted Krystal Dawn Nelson of delivering cocaine. She appeals, claiming error in the district court's refusal to give an entrapment instruction and the prosecutor's failure to give notice of intent to use W.R.E. 404(b) evidence. We reverse.

## ISSUES

[¶ 2] Ms. Nelson states the issues for this Court's determination as follows:

I. Did the trial court err in refusing to give an entrapment instruction?

II. Did the prosecutor use W.R.E. 404(b) evidence without notice to defense counsel?

The State asserts the district court properly refused to give an entrapment instruction and it was not reversible error under the circumstances for the prosecutor to introduce W.R.E. 404(b) evidence at trial.

## FACTS

[¶ 3] In May of 2008, after spending thirty days in jail in Campbell County, Wyoming on charges of felony distribution of cocaine, a twenty year old individual (informant) accepted an offer to assist the Wyoming Division of Criminal Investigation (DCI) with drug investigations. Pursuant to the agreement, the informant was to assist DCI by contacting people from whom he thought he could obtain controlled substances and arranging recorded buys. In exchange, DCI agreed to recommend reduction of his felony charge to a misdemeanor. The informant provided Deputy Robert Proffitt with a list of individuals from whom he thought he could obtain drugs. Ms. Nelson's name was one of those on the list. The informant had known Ms. Nelson casually in junior and senior high school and had worked with her a couple of times more recently at Papa John's Pizza.

[¶ 4] Under the direction of Deputy Proffitt, the informant began contacting individuals on the list. In July of 2008, he told Deputy Proffitt that he had been talking with Ms. Nelson about purchasing cocaine. Deputy Proffitt arranged to monitor and record a telephone call from the informant to Ms. Nelson. During the telephone conversation, Ms. Nelson told the informant she could get him drugs but was at work and would call him when she returned from delivering a pizza. The informant later received a call from Ms. Nelson stating that she was back at Papa John's. The informant said he would get the money and meet her there.

[¶ 5] Deputy Proffitt placed a wire on the informant and gave him $100. He followed the informant as he drove to Papa John's and watched from a nearby location as the informant handed Ms. Nelson the money and she handed something back to him. After the exchange, the informant met Deputy Proffitt back at the DCI office. He gave the deputy a plastic bag containing white powder. Deputy Proffitt placed the bag on a scale; it weighed 1 gram. Upon subsequent testing, the powder was identified as cocaine.

[¶ 6] For reasons that do not appear in the record, a warrant for Ms. Nelson's arrest was not issued until May 29, 2009, ten months later. At that time, she was arrested and charged with one count of delivering cocaine in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2009). Prior to trial, Ms. Nelson served the prosecution with a motion pursuant to W.R.E. 404(b) for disclosure of any evidence of other misconduct it intended to introduce at trial. The prosecution did not respond to the motion. Also prior to trial, Ms. Nelson asked the district court to instruct the jury concerning the entrapment defense. After the pretrial conference but before the trial, the district court advised counsel that it had concluded the entrapment defense was not relevant and it would not give the instruction.

[¶ 7] At trial, during the prosecution's questioning, Deputy Proffitt testified that Ms. Nelson had told him at the time of her arrest that she had sold cocaine to the informant "either once or twice in July." Defense counsel objected on the grounds that the prosecution had not given notice that it intended to introduce evidence of other misconduct. The district court overruled the objection. During cross-examination of Ms. Nelson, the prosecution also inquired about her involvement with drugs prior to the July 2008 delivery to the informant. The district

court again overruled defense counsel's objection and allowed the testimony.

[¶ 8] After the close of the evidence, defense counsel renewed his request for an entrapment instruction. The district court declined to give the instruction, concluding the evidence presented did not support a contention that law enforcement improperly induced Ms. Nelson to act illegally. The jury found Ms. Nelson guilty of delivering cocaine. The district court sentenced her to a term of three to five years in prison, suspended the sentence and imposed five years probation. Ms. Nelson timely appealed from the judgment and sentence.

## DISCUSSION

### 1. Entrapment Instruction

[¶ 9] Ms. Nelson contends the district court erred in refusing to give the jury an instruction on her defense theory that she was entrapped into delivering cocaine to DCI's informant. After she submitted her proposed entrapment instruction, the district court during the pretrial conference asked the prosecutor what his position was regarding the instruction. The prosecutor responded that the instruction appeared to be a standard pattern jury instruction on the entrapment defense but it should not be given to the jury in this case unless there was evidence at trial of overreaching on the part of law enforcement. He asserted there was no such evidence. The district court indicated it would look into the matter.

[¶ 10] The next day, the district court sent a letter to counsel stating that it had reviewed the probable cause statement and Wyoming precedent and had concluded the entrapment defense was not relevant in Ms. Nelson's case. The court quoted *Swartz v. State*, 971 P.2d 137, 140 (Wyo.1998), for the holding that the entrapment defense requires proof of government inducement of the crime and a lack of predisposition on the part of the defendant engaged in the criminal conduct. The district court stated:

> The evidence does not support a contention that the police induced [Ms. Nelson] into the illegal action, and as such I will not

include a jury instruction related to the defense of entrapment.

[¶ 11] Defense counsel responded to the district court's letter with his own letter stating:

> I assume that this is a decision not to include an entrapment instruction in the package of jury instructions to be prepared in advance of trial and that it is not intended as a final decision to disallow an entrapment instruction after the close of evidence at the time of trial. I recognize that an entrapment instruction would be premature at this point, but I fully expect that there will be substantial evidence produced in support of an entrapment defense during the course of the trial.

Defense counsel asked the district court to let him know if his assumption was incorrect.

[¶ 12] Nothing further appears in the record concerning the entrapment instruction until after the parties had presented their evidence at trial and the district court met with counsel to finalize the jury instructions. At that time, defense counsel renewed his request for the entrapment instruction. The district court, relying on *Swartz*, 971 P.2d 137, declined to give the instruction on the ground that no competent evidence of improper inducement by law enforcement had been presented.

[¶ 13] Ms. Nelson contends the entrapment instruction should have been given because it was her theory of defense and competent evidence was presented to support it. The failure to give an instruction on the law related to a theory of defense is a due process issue, which this Court reviews *de novo*. *Ewing v. State*, 2007 WY 78, ¶ 7, 157 P.3d 943, 946 (Wyo.2007).

[¶ 14] The law in Wyoming is well settled with respect to instructing a jury on a defendant's theory of the case.

> Due process requires the trial court to give a correct instruction to the jury that details the defendant's theory of the case. *Blakely v. State*, 474 P.2d 127, 129 (Wyo. 1970). The instruction must sufficiently inform the court of the defendant's theory and must be supported by competent evidence. *Bouwkamp v. State*, 833 P.2d 486,

490 (Wyo.1992). A theory of the case is more than a comment on the evidence that tells the jury how to consider the evidence. *Ellifritz v. State*, 704 P.2d 1300 (Wyo. 1985). Fundamentally, the instruction must in the first instance be a proper theory of the case, or theory of defense, instruction. That is, the offered instruction must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp*, 833 P.2d at 490.

. . . .

Any competent evidence is sufficient to establish a defense theory even if it consists only of testimony of the defendant. *Best v. State*, 736 P.2d 739, 745 (Wyo.1987). We view the evidence in a light favorable to the accused and the accused's testimony must be taken as entirely true to determine if the evidence is competent. *Duckett v. State*, 966 P.2d 941, 944 (Wyo.1998). Even if the court deems the evidence to be weak, or unworthy of belief, the instruction must be given if a jury could reasonably conclude the evidence supports the defendant's position. *Id.*

*Iseli v. State*, 2007 WY 102, ¶ 10, 160 P.3d 1133, 1136 (Wyo.2007), quoting *Holloman v. State*, 2002 WY 117, ¶¶ 15–16, 51 P.3d 214, 219 (Wyo.2002). However, not every instruction must be given simply because there is a claim that it incorporates a theory of the case. *Iseli*, ¶ 10, 160 P.3d at 1136, quoting *Farmer v. State*, 2005 WY 162, ¶ 23, 124 P.3d 699, 707 (Wyo.2005). Instructions not based on the evidence can be properly refused. *Id.*

■■■■■ [¶ 15] The law in Wyoming is also well settled with respect to Ms. Nelson's theory of defense. Entrapment law serves the purpose of ensuring that a defendant is not punished who, but for government encouragement, would not have committed an offense. *Rivera v. State*, 846 P.2d 1, 4 (Wyo. 1993). Entrapment does not arise where one is ready to commit the offense, given but the opportunity. *Higby v. State*, 485 P.2d 380, 384 (Wyo.1971). Suspected persons can be tested by being offered an opportunity to transgress the law; however, they may not be put under any extraordinary temptation or inducement. *Id.* With respect to what constitutes undue persuasion or enticement,

the question is not one of laying a trap or trickiness or deceit, but one of seduction or improper inducement to commit a crime. *Swartz*, 971 P.2d at 140. Inducement may arise from persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship. *Id.*

[¶ 16] We applied these principles in *Swartz* to uphold the district court's decision not to give the defendant's proposed entrapment instruction. Swartz was charged with grand larceny after she took a sports car she had previously owned from the front yard of her former boyfriend Scott's new girlfriend. At the time, Scott owned the vehicle because he had paid off the loan after Swartz was unable to make the payments and signed the title over to him to avoid default.

[¶ 17] After his relationship with Swartz ended, Scott and his new girlfriend experienced several incidents of vandalism and suspected Swartz was responsible. They contacted police who set up a video camera across the street in the hope of catching the vandal. Scott placed the car in the yard to entice Swartz. The testimony presented at trial conflicted as to whether the police were involved in that decision, with Scott and a police officer testifying that Scott alone made the decision, and Scott's parents testifying that the police suggested putting the car in the yard.

[¶ 18] After the close of the evidence, Swartz offered an entrapment instruction. The district court refused the instruction finding the evidence did not support it. We upheld the district court's decision, stating:

Scott's actions fall short of the type of behavior that would amount to an inducement to commit larceny. There is no evidence that Scott or any member of the Gillette Police Department had any contact with Swartz before the car was stolen. Nor is there evidence that Scott or the police implanted the idea of the crime in Swartz' mind. Scott did nothing more than offer Swartz an opportunity to act; an opportunity she grasped forthwith. Because Swartz presented no competent evidence of improper inducement by the government, she was not entitled to have the

defense of entrapment submitted to the jury.

*Swartz,* 971 P.2d at 140 (citation omitted).

[¶ 19] This Court also upheld a district court's refusal to give an entrapment instruction in *Higby,* 485 P.2d at 384. There, police officers gave two individuals money to buy narcotics. The person from whom they planned to buy marijuana did not show up at the arranged meeting place. Higby, however, was there and they asked him if he knew where the person they were planning to meet was, explaining that he was to bring them marijuana. Higby responded that he could get them some "stuff." One of the individuals accompanied Higby to the house where he was living, gave him the money and Higby handed him drugs. The Court rejected Higby's claim of entrapment finding the most that occurred was that the defendant was offered an opportunity to transgress the law. *Id. See also Noetzelmann v. State,* 721 P.2d 579, 581 (Wyo.1986), upholding the district court's refusal to instruct on entrapment where the evidence showed agents went to a bar for the express purpose of meeting and attempting to purchase drugs from the defendant, a surveillance crew was already set up outside the bar, an informant introduced the agents to the defendant, they asked if he could get them some marijuana, and he returned thirty minutes later with two baggies of marijuana.

[¶ 20] In contrast to the above cases, the district court gave an entrapment instruction in *Munoz v. State,* 849 P.2d 1299, 1302 (Wyo. 1993), where an informant, fitted with a recorder, contacted Munoz and attempted to arrange a buy on behalf of DCI. Munoz expressed concern that he was being watched by drug agents. The next day the informant and a DCI agent drove to Munoz's house. As they drove up, he met them, jumped in the back seat and instructed them to drive around the block. He asked the agent if he wanted a quarter ounce of marijuana, the agent said yes and Munoz handed him a bag of marijuana in exchange for $45 in cash.

[¶ 21] An entrapment instruction was also given to the jury in *Rivera,* 846 P.2d at 3. There, police officers used an informant to introduce suspected drug dealers to under-cover officers. He introduced Rivera to an undercover officer and Rivera agreed to meet them at a motel to transact a drug deal. At the motel, the officer offered Rivera marijuana and, when Rivera did not have enough money to pay for the amount offered, agreed to front him the portion he could not afford. They exchanged the money and the marijuana and Rivera was arrested.

[¶ 22] In *Janski v. State,* 538 P.2d 271 (Wyo.1975), the State presented evidence that an undercover narcotics agent went to Janski's residence and asked if he could buy hashish. Janski left the residence and returned thirty minutes later with two packages of hashish, which the agent purchased from him. Janski presented evidence that the agent had a gun when he arrived at his residence and that he pressed the gun into Janski's stomach while telling him to go get the hashish, bring it right back and not to mess around with him. *Id.* at 273. The district court instructed the jury on the defense of entrapment. In addressing Janski's claim on appeal that the State presented insufficient evidence that he was predisposed to commit the crime, this Court stated:

> The facts as submitted by the State's case in chief fulfilled the requirements of proof of predisposition. The jury chose to accept the State's evidence and reject the defendant's testimony of coercion with a firearm. A jury question was presented by the evidence.

*Id.* at 277. *See also, LaFleur v. State,* 533 P.2d 309, 314 (Wyo.1975) and *Montez v. State,* 527 P.2d 1330, 1332 (Wyo.1974), stating that, given the conflicting evidence, the question of whether the defendant was entrapped was for the jury.

[¶ 23] In the present case, Ms. Nelson testified that the informant called her on her cell phone wanting to know if she could get him any drugs and she told him, "no." He called again wanting the same thing and she again told him no. He called two or three more times and she did not answer. He called again, Ms. Nelson answered, he again wanted to know if she could get him drugs and she again told him no. Ms. Nelson testified that she talked to the informant two or three more times after that. Finally,

she told him she would see what she could do if he would leave her alone. Ms. Nelson then contacted her boyfriend to see if he knew anyone with drugs. He said a friend of his had a gram of cocaine. He talked to the friend who said he would sell the gram for $100.

[¶ 24] Ms. Nelson testified that when the informant started calling her she did not have any cocaine or any other drugs and did not know where she could get any. She testified that she tried to ignore his phone calls but he kept calling. She testified she tried telling him no but he would not take no for an answer. She testified she finally said she would see what she could do because she was tired of him calling her.

[¶ 25] Ms. Nelson also testified that although she had been involved with drugs when she was younger, she had made a decision three to four years earlier that she did not want to live her life that way and had ended her involvement. At the time the informant began calling her, she had not been involved with drugs for some time. Also about the time he began calling her, she had learned that she was pregnant.

[¶ 26] The informant's testimony about his contact with Ms. Nelson largely corroborated her testimony. He testified that he called and asked her if she would be able to get drugs and she responded "probably not." He called her again about an hour and a half later, asked her if she knew anywhere he could get any drugs and she responded, "she didn't know, she didn't think so." The next day he called her again and asked if she could get any drugs. She said "she didn't know, she didn't think so." Approximately two to three hours later, he called again and received her voice mail. He tried again a little while later and did not reach her. He continued to try and finally reached her. This time, when asked if she could find any drugs, she said "she probably could maybe, she didn't know, she would start looking." He called her again two to three hours later, asked if she had found anything yet and she said she was still looking. He waited an hour and called again. This time Ms. Nelson said she could get a gram of cocaine. The informant testified that during the time he was contacting her he had no understanding that she had possession of any drugs, nothing she said indicated that she knew where she could get drugs and she did not express any interest in trying to get drugs for him. He agreed with defense counsel that Ms. Nelson's response to his requests was discouraging.

[¶ 27] Viewing the evidence in the light most favorable to Ms. Nelson and taking her testimony as entirely true as we are required to do, we conclude she was entitled to an entrapment instruction. Given her testimony, and that of the informant, a jury reasonably could have concluded that but for the government's encouragement, she would not have obtained the cocaine and delivered it to the informant. *Rivera,* 846 P.2d at 4. A jury reasonably could have believed that rather than being ready to commit the offense given the opportunity, Ms. Nelson had distanced or was attempting to distance herself from drugs and the repeated phone calls from the informant, sometimes while she was at work, put her under extraordinary temptation to do as he asked. *Higby,* 485 P.2d at 381. Stated differently, if the jury believed her testimony, it reasonably could have concluded that the informant's repeated calls were sufficiently harassing to induce her to commit a crime in order to get him to leave her alone. *Swartz,* 971 P.2d at 140. The question was not whether she proved she was entrapped, but whether the evidence was sufficient to require giving the instruction and let the jury decide whether it believed she was entrapped. We hold that it was.

### 2. *Rule 404(b) Evidence*

[¶ 28] In her second issue, Ms. Nelson contends the prosecutor introduced and the district court upheld the admission of evidence in violation of W.R.E. 404(b) in two instances: first, when Deputy Proffitt testified she told him that she had sold cocaine to the informant once or twice in July 2008, and second, when the prosecutor cross-examined her concerning her prior involvement with marijuana. W.R.E. 404(b) (emphasis added) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the charac-

ter of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that *upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.*

When a defendant files a pretrial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b), such demand is treated as a timely objection to the admission of such evidence. *Bromley v. State,* 2009 WY 133, ¶ 27, 219 P.3d 110, 117 (Wyo.2009).

 [¶ 29] In the present case, defense counsel requested notice in advance of trial of any 404(b) evidence the prosecution intended to introduce at trial. In the case of Deputy Proffitt's testimony, defense counsel also objected during trial on the basis of Rule 404(b). When proper objection is made, we review a district court's rulings on the admission of evidence in accordance with the following standards:

> A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. As long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.

> Even if the district court admitted evidence in error, we must consider whether the error was prejudicial or harmless. Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made. Prejudicial error requires reversal, while harmless error does not.

*Reay v. State,* 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo.2008) (citations omitted).

[¶ 30] The first instance in which Ms. Nelson asserts evidence was improperly admitted occurred during the State's questioning of Deputy Proffitt about an interview he conducted with Ms. Nelson at the time of her arrest in May of 2009. Deputy Proffitt testified that he advised Ms. Nelson of her rights and had her initial the form acknowledging the advisement. Then the following exchange occurred:

> Q. [By the prosecutor] Did you then speak with her about her interactions with [the informant]?

> A. [Deputy Proffitt] Yes, I did.

> Q. What, if anything, did she tell you about [the informant]?

> A. That—Krystal Nelson stated that she had sold [the informant] cocaine either once or twice in July.

> [Defense counsel]: Excuse me, Your Honor.

> The Court: Would counsel approach.

> (Bench conference outside the hearing of the jury)

> [Defense Counsel]: Your Honor, I thought we cleared the 404(b) notice and my understanding was there was to be no testimony whatever regarding any other sales, possession, transfer, or delivery of any controlled substance.

> [Prosecutor]: It's a statement made by the defendant when she's specifically asked about her contact with this individual, and that was going to be the sum and substance of the statement. She said she got it. I interpreted the 404(b) notice with respect to information she disclosed about involvement with marijuana and potential prescription medicine during the interview, not anything as it relates to this charge.

> [Defense Counsel]: Clearly, anything relating to any prior transfer or delivery of any cocaine is, I think, entirely for the purpose of showing she actually reacted in conformity and willingness.

> The Court: Well, I don't think it violates the 404(b) issue, and if that's what she said I guess that's what she said on this issue, so I'll overrule the objection.

The prosecutor then repeated his question and Deputy Proffitt testified again that Ms. Nelson had told him she sold cocaine to the

informant either once or twice in July of 2008.

[¶ 31] Ms. Nelson contends the testimony was improper because she filed a demand for notice of W.R.E. 404(b) evidence and the State did not respond, leading her to believe no such evidence would be introduced. Because W.R.E. 404(b) expressly requires the State to give notice of its intent to use any prior misconduct evidence, she asserts its failure to do so is reversible error. The State asserts the district court properly overruled defense counsel's objection because there was no showing the prosecutor intended or even expected Deputy Proffitt to testify concerning the number of times Ms. Nelson sold cocaine to the informant. Citing *Schreibvogel v. State*, 2010 WY 45, 228 P.3d 874 (Wyo.2010), the State contends the testimony Deputy Proffitt offered in response to the prosecutor's question about what Ms. Nelson told him during the interview did not fall within the 404(b) notice requirement because it was not evidence the State intended to introduce; therefore, the usual pre-trial procedures for such evidence did not apply.

[¶ 32] In *Schreibvogel*, the defendant was convicted of first degree sexual assault and robbery. One of the State's witnesses had been in jail with the defendant and the thrust of his testimony was that the defendant had confessed to him that he committed the assault and robbery. During the trial, the prosecutor asked the witness what the defendant had told him. The witness responded that the defendant told him that he was "all coked up," went to a bar, met a woman, followed her to her business establishment and assaulted and robbed her. In upholding the testimony under a plain error analysis, we said:

It does not appear from the record that the State, prior to trial, intended to utilize the evidence of Mr. Schreibvogel's drug use. The pod-mate was not asked to testify regarding Mr. Schreibvogel's drug use. He was merely asked to tell the jury what he had been told by Mr. Schreibvogel. If the prosecution did not intend to introduce such evidence, it was not required to provide the defense with notice.

*Id.*, ¶ 35, 228 P.3d at 886 (citation omitted). We also concluded Mr. Schreibvogel could not show that he was materially prejudiced by the testimony that he was "coked up" because it was cumulative of other evidence presented to the jury concerning his drug use.

[¶ 33] In *Reay*, ¶ 8, 176 P.3d at 650, we applied the abuse of discretion standard to affirm the district court's admission of 404(b) evidence. Mr. Reay was convicted of burglary, aggravated kidnapping and battery on a household member. On appeal, he claimed evidence of other wrongs under Rule 404(b) was improperly admitted when the prosecutor asked a witness who had helped get the victim away from her assailant what she had said to him. The witness testified the victim had said there had been previous instances of violence against her by Reay. *Id.*, ¶ 15, 176 P.3d at 652. Defense counsel objected and the district court agreed to give a limiting instruction telling the jury to disregard the testimony. We said:

Implicit in the district court's offer of a limiting instruction is the conclusion that the evidence was inadmissible under W.R.E. 404(b). We agree. ... [the witness]'s comment was a direct assertion that there had been previous instances of violence against [the victim].... This was evidence of uncharged misconduct, and should not have been admitted into evidence without being analyzed as W.R.E. 404(b) requires.

*Id.*, ¶ 16, 176 P.3d at 652. In performing the 404(b) analysis, however, we concluded:

[T]he prosecution in Mr. Reay's case did not intend to introduce [the witness]' testimony as evidence of uncharged misconduct. The prosecution's question—"Is that pretty much all that you got out of her"—was not an intentional attempt to solicit improper evidence. The district court concluded that the prosecution had not elicited ... the comment, and that the comment "was somewhat nonresponsive." The prosecution also assured the district court that [the witness] had been admonished not to testify about Mr. Reay's previous assaults against [the victim]. Because the prosecution did not intend to introduce such evi-

dence, it was not required to provide the defense with notice that it would attempt to introduce the evidence.

*Id.,* ¶ 19, 176 P.3d at 653.

[¶ 34] At first blush, the question and testimony at issue here seems much like that in *Schreibvogel.* Deputy Proffitt was not asked to testify regarding any other drug sales Ms. Nelson had made to the informant. He was merely asked to tell the jury what Ms. Nelson told him in the interview. Like the witness's comment in *Reay,* however, Deputy Proffitt's testimony was a direct assertion that the sale giving rise to her arrest may not have been the only time Ms. Nelson sold the informant drugs in July of 2008. Evidence concerning another sale of controlled substances by Ms. Nelson for which she was not charged clearly falls within the types of evidence Rule 404(b) addresses.

[¶ 35] The State asserts the prosecutor did not intend to introduce evidence of other drug sales by Ms. Nelson; therefore, it was not required to give notice of the evidence in response to her pre-trial demand. This is not a case like *Schreibvogel,* where the witness giving the testimony was a former cellmate of the defendant's who may have been difficult to prepare for trial. Rather, the witness who gave the testimony here was an experienced deputy sheriff and trained drug investigator working with the prosecutor to convict Ms. Nelson. It is difficult to believe the prosecutor had not discussed his testimony with him before trial. If the intent was not to have him testify about other drug sales, the prosecutor should have directed him not to do so. This case also is not like *Reay,* where the testimony was "somewhat nonresponsive" and the prosecution assured the district court the witness had been admonished not to testify about other assaults. Deputy Proffitt responded directly to the prosecutor's question and the prosecutor made no assurances he had advised the deputy not to testify about Ms. Nelson's statement concerning other drug sales. Under these circumstances, the prosecutor's assertion that he did not intend to introduce testimony of other drug sales is not sufficient to overcome the 404(b) notice requirement.

[¶ 36] Ms. Nelson also asserts the prosecutor improperly questioned her during cross-examination concerning her prior involvement with controlled substances when he had not provided notice of the evidence in response to her pre-trial motion. The exchange was as follows:

Q. Now, there were other times though prior to that where you would be aware that a person would have a controlled substance, whether it was marijuana or methamphetamine or cocaine, and you would know that there was another person who wanted to get it that you'd help those two people meet up?

A. When I was younger.

Q. Okay. And it was a pretty regular thing then, right?

A. Not really regular, no.

Q. Okay. Now when you say—

At this point, defense counsel interrupted and asked to approach the bench. He objected that the testimony was not relevant and was beyond the scope of direct examination. The district court overruled the objection. The prosecutor then went on to solicit Ms. Nelson's testimony that four years earlier, when she was seventeen years old, she used marijuana with her friends and sometimes helped to connect people who were selling it with those who wanted to buy it.

[¶ 37] The State asserts the prosecutor was not required to provide notice of his intent to introduce evidence of Ms. Nelson's prior drug involvement if he did not intend to use such evidence at trial and there has been no showing that he intended to use the evidence. The State also maintains Ms. Nelson has not shown she was materially prejudiced by the evidence and, in any event, defense counsel opened the door to use of the evidence when he asked Ms. Nelson on direct examination whether she knew at the time the informant began contacting her where she could obtain drugs.

[¶ 38] For the same reasons we concluded the prosecutor's asserted lack of intent to introduce Deputy Proffitt's testimony was not sufficient to overcome the 404(b) notice requirement, we conclude the prosecutor's assertion that he did not intend to introduce

evidence that Ms. Nelson used marijuana three to four years earlier is not sufficient to overcome the 404(b) notice requirement. Our holdings in *Reay* and *Schreibvogel* were not intended to suggest that prosecutors can avoid claims that they failed to give the required notice by simply asserting they did not intend to introduce the evidence. Those cases were factually distinguishable from the circumstances before us here.

[¶ 39] We turn to the question of whether defense counsel opened the door to the testimony. We have recognized that a defendant may open the door to otherwise inadmissible testimony when he inquires about a particular subject, including evidence of prior criminal misconduct. *Roden v. State*, 2010 WY 11, ¶ 14, 225 P.3d 497, 501 (Wyo.2010), citing *Gayler v. State*, 957 P.2d 855, 858 (Wyo. 1998). "When the defendant initiates a line of questioning, the prosecutor is entitled to make a permissible inquiry without crossing into prosecutorial overkill." *Id.*, quoting *Espinoza v. State*, 969 P.2d 542, 546 (Wyo. 1998). Succinctly stated, the "opening the door" rule is that a party who in some way permits the trial judge to let down the gates to a field of inquiry that is not competent but relevant cannot complain if his adversary is also allowed to avail himself of the opening within its scope. *Roden*, ¶ 14, 225 P.3d at 501, quoting *Sanville v. State*, 593 P.2d 1340, 1344 (Wyo.1979).

[¶ 40] We applied these principles in *Roden* to reject claimed error in the prosecutor's questioning of one of its witnesses about his relationship with the defendant. During Roden's trial for conspiracy, aggravated robbery and aggravated assault, the prosecution called his co-conspirator to testify. On direct examination, he testified that Roden gave him $5,000 to purchase methamphetamine. On cross-examination, defense counsel attempted to discredit the witness by showing Roden had only known him for a couple of months, making it doubtful he would give him $5,000. During redirect examination, the prosecutor elicited testimony from the witness that he trusted Roden because they had been in business selling drugs and stealing for a couple of months, had made a lot of money and it was not unusual for them to give each other large sums of money. We said:

> After careful consideration, we must agree with the State that the prosecutor's line of questioning on redirect was permissible under the circumstances. When Roden's trial counsel made an issue of the plausibility of Ott's testimony concerning the nature of the money exchange, he opened the door for the prosecutor to inquire as to the nature and extent of Roden's and Ott's relationship, including information relating to the types of transactions in which the two men engaged. The prosecutor's line of questioning merely sought to clarify their relationship and to refute defense counsel's implication that it was unlikely Roden would have given Ott $5,000.00 for a drug deal after knowing him for only a few months. The prosecutor limited his inquiry to the amount of information necessary to demonstrate why it was not uncommon for Ott and Roden to exchange large sums of money, and "did not cross the line between permissible inquiry and prosecutorial overkill."

*Roden*, ¶ 16, 225 P.3d at 502.

[¶ 41] The State contends defense counsel opened the door to questioning Ms. Nelson about her prior use of drugs during the following exchange on direct examination:

Q. [By defense counsel] On the 29th of July 2008, at the time [the informant] started calling you, did you have any cocaine?

A. [Ms. Nelson] No, I did not.

Q. Did you have any methamphetamine or other drugs?

A. No, I did not.

Q. Did you know where you could get any of those drugs?

A. No, I did not.

[¶ 42] The State asserts the last question and answer opened the door for the prosecutor to question Ms. Nelson about her involvement with controlled substances three or four years earlier, when she knew people who had marijuana and people who wanted marijuana and would help get them together. The State in essence asserts the question

and answer opened the door for the prosecutor to introduce evidence he had not intended to introduce and of which he did not give notice in response to Ms. Nelson's motion for disclosure of 404(b) evidence. There is a significant difference between the question and answer that opened the door in *Roden* and the testimony in Ms. Nelson's case. In *Roden*, the testimony the prosecutor elicited on re-direct examination concerned the same transaction that led to the charges against the defendant. Here, the testimony the prosecutor elicited involved the very type of conduct Rule 404(b) addresses—prior uncharged misconduct. Moreover, the testimony elicited was the very type of evidence we would expect the prosecution to introduce in order to discredit a defense claim of entrapment. Again, we find unpersuasive the State's contention that the prosecutor did not intend to introduce the evidence. Whether or not defense counsel opened the door to the testimony, the prosecution should have provided notice of the evidence in response to Ms. Nelson's disclosure motion.

[¶ 43] Having concluded that the prosecutor did not give notice of other misconduct evidence as required under Rule 404(b), the next question for our consideration ordinarily would be whether Ms. Nelson was materially prejudiced by the testimony. However, our conclusion that error occurred when the district court declined to give an entrapment instruction makes it difficult to evaluate the question of whether prejudice resulted from lack of notice of the 404(b) evidence. On remand for a new trial with an appropriate entrapment instruction, Ms. Nelson will have notice by virtue of the first trial of the 404(b) evidence the prosecution intends to introduce and the district court can convene a hearing in accordance with *Gleason v. State*, 2002 WY 161, 57 P.3d 332 (Wyo.2002). Under these circumstances, we decline to consider whether the lack of notice under 404(b) led to material prejudice.

[¶ 44] Reversed and remanded for a new trial.